**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DONALD G. GROSS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:07CV00399 (ES) |
| AKIN GUMP STRAUSS HAUER & FELD LLP, | ) |
| Defendant. | ) |

## FIRST AMENDED ANSWER AND COUNTERCLAIMS

Defendant Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") respectfully submits its first amended response and answer to the Complaint and its counterclaims. Any allegation that is not expressly admitted is denied.

1. Defendant lacks sufficient information to admit or deny the allegations of the first sentence of paragraph 1 relating to Plaintiff's place of residence and allegations of the last sentence of paragraph 1 relating to Plaintiff's date of birth, and demands strict proof thereof. Defendant neither admits nor denies the remaining allegations of paragraph 1, because they are legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

2. Defendant denies that it is a limited liability partnership organized under the laws of the District of Columbia, and admits that it maintains its principal office in the District of Columbia. Defendant neither admits nor denies the remaining allegations of paragraph 2,

400591335v1

because they are legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

3. Defendant admits that the Complaint purports to state claims that would support this Court's jurisdiction, but denies the factual and legal sufficiency of those claims.

4. Defendant admits that the Complaint purports to state claims that support venue in this district and division, but denies the factual and legal sufficiency of those claims.

5. Defendant admits that Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on April 29, 2005, in which he alleges age discrimination, but denies the factual and legal sufficiency of those claims. Defendant neither admits nor denies the remaining allegations of paragraph 5, because they are legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

6. Defendant admits the allegations of paragraph 6.

7. Defendant neither admits nor denies the allegations of paragraph 7, because they are legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

8. Defendant admits that in June 2003, it extended an offer to Plaintiff as Senior Counsel in its Washington, D.C. office. Defendant also admits the second sentence of paragraph 8. Defendant denies the remaining allegations of paragraph 8.

9. Defendant denies the allegations of paragraph 9.

10. Defendant admits that Michael Quigley was present during Plaintiff's pre-employment interview. Defendant denies the remaining allegations of paragraph 10.

400591335v1

11. Defendant admits that during that meeting Mr. Gross made a statement to the effect that he hoped that his prior experience would not disqualify him for the position. Defendant denies the remaining allegations of paragraph 11.

12. Defendant admits that in or around March 2004, Plaintiff was absent for surgery. Defendant lacks sufficient information to admit or deny the allegation that the surgery was "minimally-invasive heart-valve" surgery. Defendant denies the remaining allegations of paragraph 12.

13. Defendant denies the allegations of paragraph 13.

14. Defendant denies the allegations of paragraph 14.

15. Defendant admits that Mr. Park redrafted "sections of major memoranda" prepared by Mr. Gross. Defendant denies the remaining allegations of paragraph 15.

16. Defendant denies the allegations of paragraph 16.

17. Defendant admits that Mr. Kim spoke with Plaintiff about the fact that Mr. Kim took baby aspirin for his heart but denies the remaining allegations of paragraph 17.

18. Defendant admits that Mr. Kim made a statement to the effect that he (Mr. Kim) hoped to retire soon. Defendant denies the remaining allegations of paragraph 18.

19. Defendant denies the allegations of paragraph 19.

20. Defendant denies the allegations of paragraph 20.

21. Defendant admits that Mr. Kim suggested that Mr. Gross investigate the possibility of working with the firm's public law and policy practice group. Defendant denies the remaining allegations of paragraph 21.

22. Defendant denies the allegations of paragraph 22.

23. Defendant admits that Mr. Quigley observed that Plaintiff's experience might make him a good fit for a job with a policy think tank or similar non-legal arena. Defendant denies the remaining allegations of paragraph 23.

24. Defendant admits that on or about August 5, 2004, Mr. Kim informed Plaintiff that the firm was terminating his employment. Defendant further admits that Mr. Quigley discussed Plaintiff with R. Bruce McLean, Akin Gump's Chairman, who decided that Mr. Gross's employment should be terminated, and that Mr. Kim relayed this to Plaintiff. Defendant denies the remaining allegations of paragraph 24.

25. Defendant admits that on or about September 1, 2004, Plaintiff met with Rick Burdick, partner-in-charge of the Washington office, and that Mr. Burdick told Mr. Gross that he knew nothing about his termination, and said he would speak with Mr. McLean and Mr. Quigley. Defendant denies the remaining allegations of paragraph 25.

26. Defendant admits the allegations of paragraph 26.

27. Defendant admits that that it terminated Plaintiff's employment effective October 31, 2004, and that it had granted Plaintiff a one-month extension of his original termination date. Defendant denies the remaining allegations of paragraph 27.

28. Defendant denies the allegations of paragraph 28.

29. Defendant denies the allegations of paragraph 29.

30. Defendant admits that Mr. Kim told Plaintiff that his termination was not based on economic reasons. Defendant denies the remaining allegations of paragraph 30.

31. Defendant denies the allegations of paragraph 31.

32. Defendant admits the allegations of paragraph 32.

400591335v1

## COUNT I

33.     Defendant incorporates the responses to paragraphs 1- 32 as if fully set forth herein.

34.     Defendant denies the allegations of paragraph 34.

35.     Defendant denies the allegations of paragraph 35.

36.     Defendant denies the allegations of paragraph 36.

## COUNT II

37.     Defendant incorporates the responses to paragraphs 1- 36 as if fully set forth herein.

38.     Defendant denies the allegations of paragraph 38.

39.     Defendant denies the allegations of paragraph 39.

40.     Defendant denies the allegations of paragraph 40.

Defendant denies that Plaintiff is entitled to any of the remedies sought in his prayer for relief. Any allegations not specifically admitted are denied.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff fails to state a claim for which relief may be granted.

### SECOND DEFENSE

Plaintiff failed to avail himself of remedial measures provided by his employer.

### THIRD DEFENSE

Plaintiff has failed to mitigate his damages, if any.

### FOURTH DEFENSE

Plaintiff has failed to exhaust his administrative requirements.

## FIFTH DEFENSE

Plaintiff's claims are time-barred.

## SIXTH DEFENSE

The relief sought by Plaintiff is limited by the "after-acquired evidence" rule.

## COUNTERCLAIMS

For its Counterclaims against Plaintiff, Donald G. Gross, Akin Gump states as follows:

## PARTIES

1. Counterclaim Plaintiff Akin Gump Strauss Hauer & Feld LLP ("Akin Gump" or "firm") is a limited liability partnership, with an office in the District of Columbia.

2. Upon information an belief, Counterclaim Defendant Donald G. Gross is an adult male citizen of the District of Columbia.

## JURISDICTION

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367.

4. Venue is proper as all acts complained of herein occurred in the District of Columbia.

## FACTS GIVING RISE TO RELIEF

5. In June 2003, Mr. Gross was offered a Senior Counsel position at Akin Gump, working for the firm's Korea clients. In this role, Mr. Gross reported to Sukhan Kim, a Partner at Akin Gump. Due to concerns raised by several Akin Gump attorneys during his interview process regarding Mr. Gross's qualifications for that position, Mr. Gross's offer letter clearly explained that it was the firm's "intention to review [his] employment situation at [his] one year anniversary and reassess our needs and the terms of [his] employment."

6

6.Mr. Gross began working for Akin Gump, and the firm quickly discovered that the concerns identified in the interview process were valid. Mr. Gross's writing lacked organization and the clear analytical skills necessary for attorneys at a major international law firm. Much of Mr. Gross's written material needed substantial revision and editing, and other attorneys at the firm, including Michael Quigley and David Park, were tasked with substantially rewriting these materials—in some instances virtually from scratch.

7.As a result, Mr. Gross could not be given the task of drafting analytical policy memorandum, and rather, was assigned to work solely on business development projects for Akin Gump's Korea Practice.

8.Akin Gump decided that it could not employ Mr. Gross in a primarily business development capacity.

9.Accordingly, just after Mr. Gross's one year anniversary, on or shortly before July 25, 2004, Mr. Gross was informed that his employment would be terminated. Mr. Kim told Mr. Gross that he would try to extend Mr. Gross's employment with the firm as long as possible to allow Mr. Gross the opportunity to find another position.

10.Prior to being informed that he would be asked to leave the firm, Mr. Gross had worked with others at the firm to persuade a particular prospective client (the "Prospective Client") to hire Akin Gump and to sign a proposed engagement letter which Mr. Gross had drafted and negotiated with input from others. He, along with several Akin Gump partners, had performed significant preliminary work with an understanding that the firm would receive certain exclusive rights thereafter to perform services.

11.On July 25, 2004, Mr. Gross, for the first time, conveyed to the Prospective Client alleged reservations about the Prospective Client retaining Akin Gump. Specifically, he wrote to

the Prospective Client: "Before you commit yourself to a partnership with Akin Gump, I want to make sure that the law firm is a hundred percent behind your project."

12. Then, on July 29, 2004, Mr. Gross encouraged the Prospective Client not to sign the final version of a previously negotiated engagement letter with Akin Gump. Specifically, he wrote to the Prospective Client:

> "For the moment, I think you should delay signing the engagement letter. *The law firm will be unhappy with this recommendation*, but I can't in good conscience ask you to rely exclusively on Akin Gump until I see actions matching words."

(emphasis added).

13. The Prospective Client did not sign an engagement letter with Akin Gump.

14. Mr. Gross's misconduct did not stop there. On July 29, 2004, Mr. Kim received an email from the Chief Executive Officer ("CEO") of Company X, a business partner of the Prospective Client, asking to meet with him about an issue related to Company Y.

15. On August 3, 2004, Mr. Gross sent Mr. Kim a memorandum preparing Mr. Kim for a meeting with the CEO of Company X, outlining, among other things, various ways in which Akin Gump and Mr. Kim could advise and assist Company X. Mr. Gross raised no concerns whatsoever to Mr. Kim about Akin Gump's or Mr. Kim's ability to effectively represent/advise Company X. In particular, with respect to a contemplated deal between Company X and Company Y, Mr. Gross wrote "from [CEO of Company X's ] standpoint, your assistance on this alone would give tremendous 'added value.'"

16. On August 5, 2004, Mr. Kim informed Mr. Gross that Akin Gump had decided that Mr. Gross would be required to leave the firm within 60 days, unless he found work elsewhere in the firm.

17. On August 6, 2004, Mr. Gross wrote to Mr. Kim, noting that it was "quite upsetting" that he was being asked to leave the firm within 60 days, stating his desire to stay at

Akin Gump, and asking for Mr. Kim's support of a position in which he would spend part of his time in the International Section of the firm (working on business development), with the remainder of his time spent on Korea-matters. Mr. Gross also stated that he "[hope[d] that [the CEO of Company X] will decide to retain Akin Gump as his international counsel" and asked Mr. Kim to inform him if there was "anything further [he could] do to help." Mr. Gross did not mention any alleged age discrimination.

18. On August 12, 2004, Mr. Gross asked Mr. Kim, via email, to recommend him for a position to the CEO of Company X, during his upcoming meeting with the CEO, because Mr. Kim had encouraged him to look for opportunities outside of Akin Gump. Mr. Kim told Mr. Gross he would do his best to help Mr. Gross obtain a position at Company X.

19. On August 14, 2004, in response to additional job opportunities forwarded by Mr. Kim, Mr. Gross stated that he felt that it was best at that point to focus his efforts on obtaining a position at Company X, thanked Mr. Kim for his assistance in this regard, and noted that he would "be quite helpful to [Mr. Kim] if [he] served as a kind of ambassador for [Company X]."

20. In contrast to the representations he was making to Mr. Kim about serving as "a kind of ambassador," beginning August 24, 2004, while still an Akin Gump employee and on its payroll, Mr. Gross made the following statements in emails to the Prospective Client, an advisor to Company X:

- "They [Akin Gump] have also ignored me and treated me very badly, though they know I am your friend and have strived to advance your interests. If [Company X] thinks it needs Washington representation, it should stick with its current law firm which has recently merged with a top D.C. firm."

- "Sukhan [Kim] said he thought [CEO of Company X] might explore retaining Akin Gump to help make a deal with [Company Y.] This didn't make sense to me at the time, and still doesn't, because Sukhan is so close to [Company Y] and a couple of other Korean business groups that [CEO of Company X] could not possibly trust him to serve as an 'honest broker.' Sukhan has never represented an American company doing

9

> business in Korea, so far as I know, and is a highly specialized trade lawyer whose practice consists of representing Korean companies in the United States."

- "Moreover, Sukhan plans to retire soon so I can't imagine he wants to spend his own time helping [Company X]."

- "I didn't know Jaemin [Park] [a then Partner at Akin Gump] was involved in this, until you mentioned she had a meeting with [CEO of Company X] in Seoul. Her help is even more questionable. . . . She claims to have Blue House connections, but except for knowing Hun-jai Lee through her family, she exaggerates her influence."

- "If [the CEO of Company X] wants to get in touch with some Korean business groups, there are other ways to do it."

21. Mr. Gross thereafter lobbied the Prospective Client in writing for a position with the Prospective Client and/or at Company X.

22. Company X did not retain the services of Akin Gump at that time.

23. Mr. Gross's employment at Akin Gump terminated on October 31, 2004.

24. Had Akin Gump known of Mr. Gross's efforts to disturb its relationships with the Prospective Client or Company X, including his statements about its attorneys, Akin Gump would have terminated him immediately and would not have allowed him to remain on the payroll through the end of October.

25. Akin Gump did not discover the email communications referenced in Paragraphs 11, 12 and 20 until they reviewed Mr. Gross's Akin Gump email account for documents responsive to Mr. Gross's First Request for Production of Documents, in May and June 2007. Akin Gump would have no reason to suspect and/or investigate this wrongdoing on the part of Mr. Gross prior to this discovery.

10

## COUNT I
**(Breach of Fiduciary Duty of Loyalty)**

26. Counterclaim Plaintiff Akin Gross incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-25 of this Counterclaim with the same force and vigor as if set out here in full.

27. While employed by Akin Gump, Mr. Gross owed Akin Gump an unselfish and undivided duty of loyalty.

28. While employed by Akin Gump, Mr. Gross discouraged the Prospective Client from signing an exclusive engagement letter for services with Akin Gump, in violation of his duty of loyalty to Akin Gump.

29. While employed by Akin Gump, Mr. Gross made negative statements about Akin Gump, and its attorneys, including Sukhan Kim and Jaemin Park to Prospective Client, and advisor to Company X, in violation of his duty of loyalty to Akin Gump.

30. While employed by Akin Gump, Mr. Gross told an advisor of Company X that Company X should not to retain the services of Akin Gump, in violation of his duty of loyalty to Akin Gump.

31. The acts committed by Mr. Gross were intentional, knowing, willful and in reckless disregard of his duty of loyalty.

32. As a direct and proximate results of the tortious acts of Mr. Gross, Akin Gump suffered damages.

## COUNT II
**(Tortious Interference with Economic Advantage)**

33. Counterclaim Plaintiff Akin Gump incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-32 of this Counterclaim with the same force and vigor as if set out here in full.

34. Akin Gump had a valid business expectancy with the Prospective Client and with Company X.

35. Mr. Gross had knowledge of Akin Gump's valid business expectancy with the Prospective Client and with Company X.

36. Mr. Gross willfully and wrongfully interfered with Akin Gump's valid business expectancy with the Prospective Client and with Company X by breaching his duty of loyalty.

37. As a direct and proximate results of the tortious acts of Mr. Gross, Akin Gump suffered damages.

*    *    *

Wherefore, the premises considered, Counterclaim Plaintiff respectfully prays that this Honorable Court:

1. Enter judgment on behalf of Counterclaim Plaintiff Akin Gump;

2. Award Counterclaim Plaintiff Akin Gump compensatory damages;

3. Award Counterclaim Plaintiff Akin Gump prejudgment and post-judgment interest;

400591335v1

4. Grant such other relief as this Court deems just and proper.

Dated: June 25, 2007                                  Respectfully submitted,

                                                      _____/s/_____
                                                      Christine N. Kearns (D.C. Bar # 416339)
                                                      Karen-Faye McTavish (D.C. Bar # 477588)
                                                      Pillsbury Winthrop Shaw Pittman LLP
                                                      2300 N Street, N.W.
                                                      Washington, DC  20037
                                                      (202) 663-8000

                                                      Counsel for Akin Gump Strauss Hauer & Feld, LLP

13

400591335v1