**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONALD G. GROSS, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Case No. 1:07CV00399 (ES) <br> ) |
| AKIN GUMP STRAUSS HAUER & FELD LLP, | ) (ELECTRONICALLY FILED) <br> ) <br> ) |
| Defendant. | ) <br> ) <br> ) <br> ) |

**OPPOSITION TO MOTION TO COMPEL**

Defendant Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), by counsel, hereby opposes Plaintiff Donald G. Gross's Motion to Compel Discovery. Mr. Gross has sued Akin Gump for age discrimination, claiming that his termination after one year of employment was based upon his age. His claim rests entirely upon alleged age-related comments by his <u>older</u> supervisor, Akin Gump partner Sukhan Kim, who had been among those who recommended that the firm hire Mr. Gross to work in its Korea Practice Group.[1]

Although it is difficult to glean the discovery disputes remaining in this matter from Plaintiff's Motion to Compel, only four discrete issues exist: 1) Whether Mr. Gross is entitled to discover additional information about other Senior Counsel at Akin Gump, including compensation and "mobility" information with respect to Senior Counsel hired before January 1, 2003 (Mr. Gross started employment with Akin Gump in July 2003) and the names of Senior

---

[1] Akin Gump is comprised of formal practice groups, as well as informal ones, such as the Korea Practice Group, in which attorneys with different substantive expertise focus on a client group.

Counsel in addition to their specific compensation information; 2) Whether Mr. Gross (a former employee of Akin Gump) is entitled to discover compensation information for partners in the Korea Practice Group, whose compensation is determined in an entirely different manner and pursuant to a Partnership Agreement to which he is not a party; 3) Whether Mr. Gross is entitled to documents relating to the writing abilities of all other Korea Practice Group attorneys; and 4) Whether Akin Gump should be required to produce non-redacted versions of its current document production to reveal information about its own clients. The resounding answer to all of these questions is no. As a preliminary matter, Mr. Gross has, in part, asked this Court to compel information and/or documents that Akin Gump had already produced, and/or agreed to produce at the time the motion was filed.[2] In addition, as explained below, these requests have nothing whatsoever to do with liability or damages in this case.

**I.   BACKGROUND**

The facts of this case are undisputed. In July 2003 Mr. Gross started employment at Akin Gump as an Senior Counsel, at an annual base salary of $250,000. Due to serious misgivings on the part of several attorneys about Mr. Gross's qualifications for the position that he was being hired to fill, Akin Gump hired Mr. Gross for a one year trial term. As Michael Kaye, a then-partner at Akin Gump, explained in writing after interviewing Mr. Gross:

> He struck me as being somewhat na[i]ve about what law firms are all about. . . . For instance, I'm not sure he has an appreciation for the intensity of big U.S. law firm. . . . He seemed much more interested in trying to "generate business" from his Korea contacts than he was in rolling up his sleeves to help us in the Korea practice. . . . Truthfully, I

---

[2] Despite Mr. Gross's overbroad requests for irrelevant information, Akin Gump, in an ongoing effort to come to agreement with Mr. Gross on discovery issues, has entered into extensive discovery discussions with Mr. Gross and has produced significant amounts of information and documents requested by Mr. Gross.

400601632v1

>don't think he has a finder personality, and honestly we don't need
>someone to bring in more business, we need someone to service what we
>already have.

The terms of Mr. Gross's employment and $250,000 salary were clearly outlined in his offer letter, in which Akin Gump clearly provided that the firm would reconsider its need for him after one year. Specifically, the offer letter contained the following language: "[l]ike other employees of the firm, you will be considered an employee at will; however, it is our intention to review your employment situation at your one year anniversary and reassess our needs and the terms of your employment."[3] Deposition Transcript of Donald G. Gross ("Gross Dep.") at 69:10-22; Gross Dep. Exhibit 4. Mr. Gross never discussed any type of bonus with anyone at Akin Gump. Id. at 66:11-20. At no time prior to or during his brief tenure at Akin Gump did Mr. Gross discuss his prospects with respect to partnership at Akin Gump with anyone. Id. at 330:3-10.

The firm's initial misgivings proved to be correct. Mr. Gross's "employment was terminated for his adequate performance and contributions." Defendant's Response to Plaintiff's First Set of Interrogatories, Interrogatory No. 1. For example, when Mr. Gross began his employment with Akin Gump, he was informed (repeatedly) that he was required to bill 2,100 hours of billable client work annually. See Gross Dep. at 81:17- 82:4. In January 2004 he noted to himself the need to "try by whatever means to increase my billable hours." Id. at 136:9-138:20. He failed to meet this requirement—billing only approximately 1,300 during his first year of employment with Akin Gump. Id. at 140:3-7. Mr. Gross's written client billable work

---

[3] Despite this clear language, Mr. Gross inexplicably testified during his deposition that Akin Gump's plan to "reassess [its] needs and the terms of his employment" simply meant that he would receive an annual performance review. Gross Dep. at 225:1-17. Although Akin Gump will cite to specific references in Mr. Gross's deposition testimony herein, it will, for the sake of efficiency, reserve attaching the relevant pages of Mr. Gross's deposition until a more appropriate time, unless the Court would like to see it.

was also lacking. Others, including David Park, then Counsel at Akin Gump, and Michael Quigley, a former Akin Gump partner who is no longer with the firm, will testify in this matter that they often had to substantially rework and rewrite Mr. Gross's written client work-in some instances virtually from scratch. Akin Gump was not alone in finding Mr. Gross's written work deficient. In April 2004, a Senior Advisor to the Center for Strategic and International Studies commented on a paper Mr. Gross submitted for publication as follows: "Don[] I have had a chance to look at your paper. I have an obligation to USIP to make sure these papers are the best they can be. Honestly, I still think yours falls short of the mark."

Ultimately, the firm decided to terminate the employment of both Mr. Gross and a partner (under 40) in the Korea Practice Group based in Akin Gump's offices in Los Angeles, California. Mr. Gross himself repeatedly and correctly explained the circumstances of the termination of his employment at Akin Gump to third parties as follows:

> Over the summer, Akin Gump's management put considerable pressure on the Korea practice group here to reduce its costs due to insufficient profitability. As a consequence, I and a partner in the practice group from our L.A. office were asked to leave the firm. Though this decision seems very unfair and short-sighted because I have only been at Akin Gump about one year (and have done quite well), it is the reality I am facing.

Id. at 313:10- 314:18, Gross Dep. Exhibit 27.

Mr. Gross also repeatedly asked Mr. Kim and others at Akin Gump for assistance in finding a new role within Akin Gump and in finding a position outside of the firm. It is undisputed that they did so. Mr. Gross also admits that he never complained about any alleged comments made by Mr. Kim to Mr. Kim or to anyone else at Akin Gump. Id. at 243:7-14; 272:19-22; 339:2-7.

Only after requesting and receiving assistance and letters of reference from Mr. Kim, and other Akin Gump partners, and after almost a full year since the alleged comments were made, did Mr. Gross change his story and allege age discrimination in connection with his termination. His Complaint is entirely based on alleged ageist statements made by Mr. Kim, who is older than Mr. Gross, and who interviewed Mr. Gross and was one of the individuals that decided to hire him.

Finally, during discovery in this matter, Akin Gump uncovered the fact that while an Akin Gump employee, and on Akin Gump's payroll, Mr. Gross actively encouraged prospective clients of Akin Gump not to retain the services of Akin Gump, including making negative statements about the motivation, experience and level of influence of those Akin Gump partners, including Mr. Kim, who were assisting (at Mr. Gross's request) in his search for another position both inside and outside of the firm.  Mr. Gross admits to making these statements.  Gross Dep. at 288:13- 290:22; 327:10- 329:22; Gross Dep. Exhibit 31.  Mr. Gross has not opposed Akin Gump's Motion for Leave to Amend its Answer to include tortious interference and breach of duty of loyalty Counterclaims and the "after-acquired" evidence Affirmative Defense, and has, today, served Akin Gump with discovery requests relating to Akin Gump's Counterclaims and Affirmative Defense.  Mr. Gross further admits to actively seeking employment with one of these prospective clients at the time he made the disparaging comments about the firm.

## II.    ARGUMENT

### A.    Mr. Gross Does Not Need Addition Information Relating to Senior Counsel.

As a threshold matter, Mr. Gross has inaccurately described the information that Akin Gump has produced and/or agreed to produce with respect to this request.  Akin Gump has

provided Mr. Gross with ample information with respect to the compensation and "mobility" information of its Senior Counsel. Mr. Gross worked for Akin Gump from July 2003 through October 2004. In a sworn interrogatory response, Akin Gump has produced the complete compensation information (including bonus information—despite the fact that Mr. Gross never discussed a bonus with anyone at Akin Gump) for all Senior Counsel (45 in total) hired after January 1, 2003, for the time period between January 1, 2003 through the present—without identifying the names of the Senior Counsel (they are referenced by employee number).[4]

In addition, Akin Gump has provided (and had agreed to provide at the time Mr. Gross's motion was filed) a sworn interrogatory response stating that out of the 45 Senior Counsel hired after January 1, 2003, only two (2) individuals have been made partner (information that it had already provided to Mr. Gross). Akin Gump also provided Mr. Gross with the compensation information for these two individuals prior to his filing of his Motion. Finally, Akin Gump has produced documentation regarding all benefits available to Senior Counsel. See AK 000164- AK 000172.

Akin Gump produced this information, despite the fact that Mr. Gross's request for information regarding compensation information for all Senior Counsel at Akin Gump is wholly irrelevant, not reasonably calculated to lead to admissible evidence in this case and overbroad. As Akin Gump has repeatedly explained to Mr. Gross's counsel, the Senior Counsel title at Akin Gump covers a wide variety of individuals employed under a host of different circumstances. Unlike associates (whose base compensation is lock-step and who are eligible for bonuses based on structured criteria), Senior Counsel compensation is highly individualized and varies greatly.

---

[4] The information produced by Akin Gump in this case has been marked "Confidential." Akin Gump will gladly provide this information to the Court under seal if the Court would find this useful.

Accordingly, the compensation earned by other Senior Counsel at Akin Gump provides no information whatsoever about what Mr. Gross would have earned had he remained employed by Akin Gump.  Moreover, the terms of Mr. Gross's employment with Akin Gump, including the fact that the firm would reassess its needs for Mr. Gross after one year and his compensation terms, were clearly described in his offer letter.

Mr. Gross has complete compensation information for all Senior Counsel hired in the year he was hired (going back seven months before his hire date) through the present (almost three years after his termination).  Mr. Gross's unsupported claim that he needs the names of the Senior Counsel in connection with their compensation information, or additional Senior Counsel compensation or "mobility" information in order to enable an expert to predict a range of compensation makes no sense.  He has offered no explanation whatsoever as to why he or his expert need to know this highly confidential information.  There is none.

**B.    Mr. Gross is Not Entitled To Compensation Information for Akin Gump Partners.**

Once again, Mr. Gross's description of what Akin Gump has produced and/or agreed to produce with respect to compensation information for its Korea Practice Group attorneys is, at best, a confusing mischaracterization.  Akin Gump has produced (and agreed to produce prior to Mr. Gross's filing of this motion) a sworn interrogatory listing complete compensation information (including bonus information) for all non-partner attorneys in its Korea Practice Group between January 1, 2003 and the present.

The real dispute here involves Mr. Gross's inappropriate request for compensation information for partners in the Korea Practice Group.  Mr. Gross was not a partner at Akin Gump.  To the contrary, Mr. Gross never discussed his prospects for partnership at Akin Gump

7

with anyone at Akin Gump. In fact, because of serious misgivings about Mr. Gross's fit for the position that he was being hired to fill, Akin Gump hired Mr. Gross as a Senior Counsel for a one year trial term. This was clearly outlined in Mr. Gross's offer letter. In addition, partners at Akin Gump are compensated completely differently that the firm's employee attorneys, according to the terms of a Partnership Agreement to which Mr. Gross was not a party. Moreover, as noted above, out of the 45 Senior Counsel hired after January 1, 2003, only two (2) individuals have been made partner. Despite these facts, Mr. Gross maintains that he needs the compensation information for Akin Gump partners in order to predict the compensation that he would have earned absent any alleged discrimination. This perceived "need" presupposes an entirely speculative move to partner. Mr. Gross has alleged no facts that indicate that he would have made the exceptional move from Senior Counsel to partner at Akin Gump.

> C. **The Writing and Analytical Abilities of Other Korea Practice Group Attorneys is Irrelevant.**

Mr. Gross has requested that Akin Gump produce all documents relating to the writing abilities and analytical abilities of all other attorneys in the Korea Practice Group. Specifically, Mr. Gross has asked Akin Gump to respond to the following requests:

> Request No. 17: If you contend that Plaintiff's writing abilities were deficient in any manner, please produce all documents reflecting or related to the writing abilities of all Korea Practice Group attorneys for the period January 1, 2002 through December 31, 2005.
>
> Request No. 19: If you contend that Plaintiff's analytical abilities were deficient in any manner, please produce all documents reflecting or related to the analytical abilities of all Korea Practice Group attorneys for the period January 1, 2002 through December 31, 2005.

To begin with, responding to these over-broad requests would be unduly burdensome. This would require Akin Gump to search for and produce everything written by all of the

attorneys in its Korea Practice Group for a multi-year period. In addition, these burdensome requests are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in this case for a number of reasons. Despite the lack of relevancy of Mr. Gross's request, Akin Gump has already undertaken an inquiry and has confirmed to Mr. Gross in a discovery response that no serious issues with respect to the writing of any other attorneys in the Korea Practice Group were raised between January 1, 2003 and the present that required substantial reworking and rewriting-including, in some instances virtually rewriting from scratch. Akin Gump is happy to include this information in a sworn declaration. Mr. Gross's request that Akin Gump search for and produce <u>all</u> of the writing and drafting undertaken by numerous attorneys for a multi-year period--especially when no serious issue has been raised about any of those individuals' writing, and where there is no claim in the case that Mr. Gross was treated any differently than anyone at Akin Gump, is the very definition of an unreasonably burdensome request.

Additionally, Mr. Gross has based his allegations of age discrimination in this suit entirely on alleged ageist remarks by Mr. Kim. He has not alleged that anyone younger at Akin Gump was treated any differently than he was treated or that he was replaced by someone younger. Accordingly, his belief that he is "entitled to compare how much editing or 'redrafting' was required of other attorneys" to that of required with respect to his writing is incorrect. The requested information is irrelevant to his claims that ageist remarks were made to him, and is not reasonably calculated to lead to the discovery of any admissible evidence in support of his claims of ageist remarks.

### D. This Court Should Not Compel Production of Non-redacted Documents.

Akin Gump is a law firm. As a law firm, Akin Gump has a duty to its clients to protect their privileged and confidential information. Accordingly, Akin Gump redacted client identifying information from its production (including names and contact information of its clients and client representatives as well as, in some circumstances, the names of highly identifiable projects that would reveal the identity of its clients). This is a legitimate and reasonable measure given Akin Gump's duty to protect this information and the total lack of relevancy of this information to the claims in this case.[5] In addition, Mr. Gross has brought an age discrimination case against Akin Gump based on alleged discriminatory statements made by Mr. Kim. Mr. Gross has not provided, nor can he provide, any explanation as to how the identity of Akin Gump's clients would reasonably lead to the discovery of admissible evidence in connection with his claim. The names and other identification information of Akin Gump's clients is wholly irrelevant to Mr. Gross's age discrimination claim.

Finally, Mr. Gross argues that he needs non-redacted versions of the documents Akin Gump has produced because client identifying information is needed in order to respond to and defend against Akin Gump's Counterclaims and Alternative Defense. Akin Gump sincerely hopes that Mr. Gross did not, while an employee of Akin Gump and while on Akin Gump's payroll, actively discourage so many Akin Gump prospective clients from retaining Akin Gump's services that he is unable to identify those referenced in Akin Gump's Counterclaims

---

[5] The two cases from outside this jurisdiction that Mr. Gross cites in his Motion in support of his argument that the protective order in place in this matter adequately protects Akin Gump's client identification information are inapposite. See Motion to Compel at 12. Neither case involves a law firm or the attorney-client privilege.

400601632v1

and Affirmative Defense. To the extent that this is the case, however, Akin Gump is willing to provide non-redacted copies of the emails relating to its Counterclaims and Affirmative Defense.

### III.   CONCLUSION

For the foregoing reasons, Akin Gump respectfully requests that the Court deny Plaintiff's Motion to Compel in its entirety.

DATED: July 17, 2007                         Respectfully submitted,


                                             _____/s/_____
                                             Christine N. Kearns (Bar # 416339)
                                             Karen-Faye McTavish (Bar # 477588)
                                             Pillsbury Winthrop Shaw Pittman LLP
                                             2300 N Street, N.W.
                                             Washington, DC  20037
                                             Telephone: (202) 663-8000

                                             Counsel for Defendant