IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD G. GROSS,<br><br>      Plaintiff,<br><br>      v.<br><br>AKIN GUMP STRAUSS HAUER & FELD LLP,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:07CV00399 (EGS)<br>)<br>)<br>)  (ELECTRONICALLY FILED)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPPOSITION TO MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT**

Defendant Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), by counsel, hereby respectfully requests that this Court deny Plaintiff Donald G. Gross's Motion for Leave to Amend and Supplement his Complaint. Mr. Gross has asked for leave to include retaliation claims on the strained theory that Akin Gump's amendment of its Answer to include an "after-acquired evidence" Affirmative Defense and Counterclaims due to Mr. Gross's wrongdoing uncovered during the discovery process in this case constitutes retaliation. The retaliation claims are futile as a matter of law.

First, Mr. Gross has failed to exhaust his administrative remedies prior to bringing a retaliation claim, as required by the Age Discrimination in Employment Act ("ADEA") (Count III of the proposed Amended Complaint). Second, Mr. Gross's retaliation claims based on Akin Gump's Counterclaims, (which Akin Gump brought after its discovery of Mr. Gross's wrongdoing more than two years after he filed a Charge alleging age discrimination with the

Equal Employment Opportunity Commission ("EEOC") and four months after he filed his Complaint), could not survive a motion to dismiss. Federal Courts have repeatedly rejected proposed retaliation claims under identical circumstances. Moreover, Mr. Gross has not pled, and cannot plead, retaliation as a matter of law.

I.   BACKGROUND

On April 29, 2005, Mr. Gross filed a Charge with the EEOC alleging age discrimination under the ADEA and the District of Columbia Human Rights Act ("DCHRA"). On February 26, 2007, Mr. Gross filed a Complaint in which he made the same allegations as in his EEOC Charge.

On April 12, 2007, Mr. Gross served his First Request for Production of Documents. During the process of collecting documents responsive to Mr. Gross's requests, Akin Gump discovered that while still an Akin Gump employee, and on Akin Gump's payroll, Mr. Gross actively encouraged prospective clients of Akin Gump not to retain the services of Akin Gump, including sending negative emails to prospective clients about the motivation, experience and level of influence of Akin Gump partners:

- "Everyone tells me they want to be supportive and they should start reporting client feedback soon. But I'm not satisfied with the out-reach efforts of the fund group so far, though there's no question the law firm would do an excellent job on the legal work. For the moment, I think you should delay signing the engagement letter. *The law firm will be unhappy with this recommendation*, but I can't in good conscience ask you to rely exclusively on Akin Gump until I see actions matching words."

(emphasis added).

- "If [Company X] thinks it needs Washington representation, it should stick with its current law firm which has recently merged with a top D.C. firm."

- "Sukhan [Kim] said he thought [CEO of Company X] might explore retaining Akin Gump to help make a deal with [Company Y.] This didn't make sense to me at the time, and still doesn't, because Sukhan is so close to [Company Y] and a couple of other Korean business groups that [CEO of Company X] could not possibly trust him to serve as an 'honest broker.' Sukhan has never represented an American company doing business in Korea, so far as I know, and is a highly specialized trade lawyer whose practice consists of representing Korean companies in the United States."

- "Moreover, Sukhan plans to retire soon so I can't imagine he wants to spend his own time helping [Company X]."

- "I didn't know Jaemin [Park] [a then Partner at Akin Gump] was involved in this, until you mentioned she had a meeting with [CEO of Company X] in Seoul. Her help is even more questionable. . . . She claims to have Blue House connections, but except for knowing Hun-jai Lee through her family, she exaggerates her influence."

- "If [the CEO of Company X] wants to get in touch with some Korean business groups, there are other ways to do it."[1]

Mr. Gross admitted to sending these emails at his deposition. Gross Dep. at 288:13-290:22; 327:10- 329:22. He also admitted that he did not advise anyone at Akin Gump he was doing so. Finally, he admitted that he was simultaneously seeking employment with one of the prospective clients.

Accordingly, on June 25, 2007, more than two years after Mr. Gross filed his EEOC charge and four months after Mr. Gross filed his Complaint, Akin Gump filed a motion with this Court seeking leave to amend its Answer to include an "after-acquired evidence" Affirmative Defense and tortious interference and breach of duty of loyalty Counterclaims. Mr. Gross then filed his motion seeking leave of this Court to amend his Complaint to include claims of

---

[1] Significantly, while Mr. Gross felt free to disparage the firm on countless occasions, he never told anyone about the alleged ageist comments that form the basis of this case while at the firm or for over seven months after he left the firm.

retaliation under the ADEA (Count III) and under the DCHRA (Count IV), based on Akin Gump's assertion of Counterclaims in this matter.

## II.   ARGUMENT

Although leave to amend a complaint should be freely granted, it may be denied if the proposed amended pleading would be futile.  See Fed. R. Civ. P. 15(a); Harrison v. McCaleb, No. 06-5144, 2007 U.S. App. LEXIS 651 (D.C. Cir. Jan. 10, 2007) (holding that the district court did not abuse its discretion in denying appellant's motion for leave to amend complaint when such leave would have been futile).  See also Camp v. District of Columbia, No. 04-234 (CKK), 2006 U.S. Dist. LEXIS 13317 (D.D.C. Mar. 14, 2006) (denying employee's motion for leave to amend her complaint to add a retaliation claim because such amendment would be futile because the plaintiff had failed to exhaust her administrative remedies); James Madison, Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (holding that "Courts may deny as futile a motion to amend a complaint as futile [when] the proposed claim would not survive a motion to dismiss").  Here, for the reasons stated below, Mr. Gross's retaliation claims would not survive a motion to dismiss.

### A.   Mr. Gross Has Failed to Exhaust His Administrative Remedies.

In actions brought under ADEA (like Title VII), a court has authority over only those claims that are "contained in the plaintiff's administrative complaint" or claims "like or reasonably related to" those claims in the administrative complaint." Johnson v. Gonzales, 479 F. Supp. 2d 55, 58 (D.D.C. 2007) citing Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995).  "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as

deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge," <u>Marshall v. Federal Express Corp.</u>, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (affirming grant of summary judgment on wrongful termination claim where plaintiff's EEOC charge made no mention of her termination) (internal citation and quotations omitted). The "administrative exhaustion requirement applies to all discrete acts of discrimination or retaliation." <u>Nurriddin v. Goldin</u>, 382 F. Supp. 2d 79, 92 (D.D.C. 2005) (Bates, J.) (internal citation omitted), *aff'd*, No. 05-5386, 2007 U.S. App. LEXIS 9001 (D.C. Cir. Apr. 16, 2007). Finally, this Court has recently recognized that "[t]hese procedural requirements governing plaintiff's right to bring a Title VII claim in federal court are not trivial . . . . Dismissal results when a plaintiff fails to exhaust administrative remedies." *Rattigan v. Gonzales*, No. 04-2009 (ESH), 2007 U.S. Dist. LEXIS 39227, at **21-22 (D.D.C. May 31, 2007) *citing* <u>Gillet v. King</u>, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing Title VII claim for failure to exhaust administrative remedies), *aff'd*, 132 F.3d 1481 (D.C. Cir. 1997).

<u>Camp v. District of Columbia</u>, 2006 U.S. Dist. LEXIS 13317, is directly on point. The court denied plaintiff employee's motion for leave to file an amended complaint to add a retaliation claim. The court explained that the plaintiff was required to "exhaust her administrative remedies for her termination/retaliation claim, which is a separate discrete act." <u>Id.</u> at *25 (internal citation omitted). Additionally, the court held that:

> Under these circumstances, allowing Plaintiff to proceed with her retaliatory termination claims contained within her planned First Amended Complaint "would sanction spurious avoidance of the administrative process. Such a result would be contrary to the policies that initially gave rise to the retaliation exception, and would work an injury upon the policy objectives underlying the requirement of administrative exhaustion.

<u>Id.</u> at **25-26 (internal citations omitted).

400603838v1

Likewise, here, Mr. Gross's failure to raise his allegations of retaliation with the EEOC undercuts the purpose of the exhaustion requirement. As a result, Mr. Gross's Motion to Amend his Complaint to include Count III, "Retaliation in Violation of the Age Discrimination in Employment Act," must be denied.

### B. Mr. Gross Fails To State a Retaliation Claim.

To establish a *prima facie* case of retaliation under the ADEA or the DCHRA, Mr. Gross must show that (1) he engaged in a statutorily protected activity; (2) the employer took an adverse employment action; and (3) there was a causal connection between the two. Clipper v. Billington, 414 F. Supp. 2d 16 (D.D.C. 2006) ("ADEA"); Carpenter v. Federal Nat'l Mortgage Ass'n, 174 F.3d 231 (D.C. Cir. 1999) (DCHRA). While plaintiff is not required to plead each element of this *prima facie* case to survive a motion to dismiss, the Court may explore the plaintiff's *prima facie* case at the dismissal stage to determine "whether the plaintiff can ever meet his initial burden to establish a prima facie case." Rattigan v. Gonzales, 2007 U.S. Dist. LEXIS 39227, at *45 (internal citation omitted). The factual allegations in Mr. Gross's proposed Amended Complaint make clear that Mr. Gross will never be able to satisfy the second and third elements of his retaliation claims.

#### 1. The Filing of a Counterclaim Is Not An Adverse Employment Action.

Mr. Gross asserts that filing a lawsuit "and, by implication, counterclaims" against an employee complaining of discrimination can constitute unlawful retaliation. Mr. Gross is wrong. Many federal courts have held that the filing of counterclaims (especially in situation, where, as here, counterclaims are filed after the discovery of plaintiff wrongdoing during the discovery process) cannot, as a matter of law, be an adverse employment action. Although Mr. Gross is

correct that this Court has found that under certain circumstances the filing of a <u>lawsuit</u> can be an adverse action, he has not cited one viable case that has found that the filing of a <u>counterclaim</u> is an adverse employment action.[2]  Numerous courts have held that key differences exist between the filing of a lawsuit and filing counterclaims in a lawsuit that has already been initiated by the former employee.

For example, under circumstances similar to those in this case, the court in <u>Earl v. Electro-Coatings of Iowa, Inc.</u>, No. C02-0042, 2002 U.S. Dist. LEXIS 20937 (N.D. Iowa Oct. 29, 2002), denied a plaintiff's motion to amend his complaint to add a retaliation claim based on his former employer's filing of a counterclaim:

> Although many different post-termination actions may constitute retaliation, this court holds that, ordinarily, a counterclaim may not. Initially, the court notes that a counterclaim is not to be considered an employment-related action. Only in the rare case will conduct that occurs within the scope of litigation amount to retaliation. . . . Defendants in discrimination suits must have some leeway to investigate possible defenses without undue fear of being subjected to additional liability in retaliation suits.

<u>Id.</u> at **6-8 (internal quotations omitted).

Similarly, In <u>Timmerman v. U.S. Bank, N.A.</u>, No. 04-cv-01903-REB-MJW, 2006 U.S. Dist. LEXIS 19356 (D. Col. Mar. 31, 2006), *aff'd on other grounds*, 483 F.3d 1106 (10th Cir. 2007),[3] the court held that:

---

[2] As set forth below, the one case he cites has been overruled.

[3] The Tenth Circuit, citing <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), also stated that the applicable standard for whether an adverse employment action has occurred is whether the employer's actions "would have been materially adverse to a reasonable employee or job applicant," and noted that "[w]hile it is certainly an interesting question whether the filing of counterclaims in response to discrimination claims brought by a former employee constitutes an adverse employment action," that question did not need to be decided in that case.  <u>See</u> 483 F.3d at 1123.

7

> Plaintiff has failed to state actionable claims for retaliation based on defendant's assertion of counterclaims against her in this litigation. To state an actionable claim for retaliation, plaintiff must establish, *inter alia*, that she suffered an adverse employment action. Post-termination conduct can constitute an adverse employment action, and in particular, the filing of a retaliatory lawsuit may be thus construed. However, I perceive a crucial distinction in this regard between an employer *initiating* its own retaliatory lawsuit against the employee, on the one hand, and filing a counterclaim once it has been made a defendant by the employee. One of the primary justifications for permitting retaliation claims based on the filing of a lawsuit against the employee is the potential chilling effect that action may have on the employee's pursuit of her discrimination claim. The same concern is not implicated when the employee has already instituted litigation.

2006 U.S. Dist. LEXIS 19356 at **15-17 (internal citations omitted). Moreover, the Timmerman court based its dismissal of a matter of law on the fact that, like here:

> Defendant instituted its counterclaims only after it was revealed in discovery that plaintiff had taken money that ostensibly belonged to defendant. It is clear that its decision to do so was based on that information, not on plaintiff's protected activity of instituting this lawsuit.

Id. at *17 (internal citations omitted).

There is more. In Beltran v. Brentwood N. Healthcare Ctr., LLC, 426 F. Supp. 2d 827 (N.D. Ill. 2006), the court granted the defendant employer's motion to dismiss a former employee's retaliation claim. The court found that:

> As the Seventh Circuit has explained, except in rare cases, conduct occurring within the scope of litigation does not provide grounds for a retaliation claim. This is not one of the rare cases. The purpose of statutory anti-retaliation provisions is to prevent employers from intimidating employees and discouraging them from enforcing their legal rights. We recognize that an employer's lawsuit filed with a retaliatory motive rather than in good faith may constitute an adverse action and provide a basis for a retaliation claim. But if the mere filing of a counterclaim were sufficient to give rise to a retaliation claim, then every defendant in an FLSA, Title VII or ADA lawsuit who asserts a counterclaim would be subject to a retaliation claim. Because filing a counterclaim is different from initiating a lawsuit, courts in this district

8

> repeatedly have ruled that filing a counterclaim, without more, is not an adverse action and thus cannot support a retaliation claim. . . . unlike initiating litigation against an employee, filing a counterclaim will not chill plaintiffs from exercising and enforcing their statutory rights because by the time the employer files its counterclaim, plaintiffs have already made their charges and initiated a lawsuit. Additionally, asserting a counterclaim generally will not cause a plaintiff to incur the expense of hiring a lawyer to respond to the claim because the plaintiff likely will already have legal representation. Moreover, as [defendant] points out, its counterclaim was compulsory – under Rule 13 of the Federal Rules of Civil Procedure [defendant] had to file any claims against plaintiffs arising out of the same transaction or waive them. Because counterclaims are supposed to be brought in response to a complaint, there is nothing suspicious about the timing of [defendant's] counterclaim.

Id. at 833-34 (internal citations omitted).

The only case that Mr. Gross cites in his motion that even involves a retaliation claim based on the filing of counterclaim is Shafer v. Dallas County Hosp. Dist., 76 Fair Empl. Prac. Cas. (BNA) 1557 (N.D. Tex. 1997). Shafer, however, has been overruled by the United States Court of Appeals for the Fifth Circuit in Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528 (5th Cir. 2003), which held that "an employer's filing of a counterclaim cannot support a retaliation claim in the Fifth Circuit." Id. at 532-33.[4]

Akin Gump brought its Motion for Leave to Amend its Answer to include Counterclaims and an Affirmative Defense after it uncovered, during the process of collecting documents responsive to Mr. Gross's request for the productions of documents in this case, that while still an Akin Gump employee, and on Akin Gump's payroll, Mr. Gross had actively encouraged prospective clients of Akin Gump not to retain the services of Akin Gump, including making

---

[4] See Stewart v. Sanmina Texas L.P., 156 S.W.3d 198, 209 (Tex. Ct. App. 2005) (finding that summary judgment for the defendant was supported on the grounds that "a former employer's counterclaim cannot form the basis for a retaliation claim as a matter of law," and noting that "Stewart argues that Shafer v. Dallas County Hospital District supports his claim that filing a counterclaim constitutes an adverse employment action. However, this issue has been decided against Stewart in Hernandez. Accordingly, we conclude that Shafer is no longer sound authority.").

9

negative statements about the motivation, experience and level of influence of Akin Gump partners. Unlike cases cited by Mr. Gross where the bad faith filing of baseless <u>lawsuits</u> were found to be adverse employment actions, Mr. Gross presents nothing to suggest that Akin Gump did not bring these Counterclaims in good faith, or that they do not have a good faith basis for their claims.[5] To the contrary, during his deposition in this matter, Mr. Gross admitted sending the many emails upon which Akin Gump based its Counterclaims and Affirmative Defense, not telling anyone at Akin Gump he was doing so and simultaneously seeking a job with one of the potential clients. As numerous federal courts have recognized, it simply cannot be the case that defendants in discrimination suits cannot add affirmative defenses and counterclaims in suits raised against them without being subjected to retaliation suits.

      **2.    Even If The Filing Of Counterclaims Could Be An Adverse Employment Action, Mr. Gross's Retaliation Allegation Fails.**

Even if Akin Gump's filing of counterclaims could be an adverse employment action (which it cannot), Mr. Gross's retaliation claim could not survive a motion to dismiss because he cannot, as a matter of law, establish any causal connection between a protected activity and Akin Gump's filing of it Motion for Leave to Amend its Answer to include Counterclaims.

Akin Gump filed its motion with this Court seeking leave to amend its Answer to include an "after-acquired evidence" Affirmative Defense and tortious interference and breach of duty of loyalty Counterclaims on June 25, 2007, more than <u>two</u> <u>years</u> after Mr. Gross filed his EEOC charge and <u>four</u> months after Mr. Gross filed his Complaint. This Court, in addition to the District of Columbia Court of Appeals, has repeatedly found that a lapse of this duration between

---

[5] For example, Mr. Gross cites to <u>Berry v. Stevinson Chevrolet</u>, 74 F.3d 980 (10th Cir. 1996), where the court found that an employer maliciously filing baseless criminal charges against a former employee could constitute an adverse employment action. That is clearly not even close to the situation here.

protected activity and an alleged adverse employment action is insufficient to establish causation on the basis of temporal proximity as a matter of law.  See Mayers v. Laborers' Health & Safety Fund of N. Am., 478 F.3d 364, 369 (D.C. Cir. 2007) (finding that the eight-or nine-month gap between the protected activity and the alleged retaliatory act was "far too long" citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508 (2001) (citing with approval circuit cases rejecting temporal proximity of three and four months as evidence of causation)); Cheek v. Chertoff, No. 04-251 (RMC), 2006 U.S. Dist. LEXIS 14341, at *33 (D.D.C. Mar. 17, 2006) (noting that this Court has followed a three-month rule to establish causation on the basis of temporal proximity and finding that the Court could not infer a causal connection to employment actions taken two years after the filing of an EEOC charge, stating that "[t]he long period of time between the two events destroys any inference that they were causally connected"); Willingham v. Gonzales, 391 F. Supp. 2d 52, 61 (D.D.C. 2005) (noting that this Court has followed a three-month rule to establish causation on the basis of temporal proximity and finding that where more than six moths has elapsed between the alleged protective activity and retaliatory act, plaintiff could not, as a matter of law, demonstrate causation); Gustave-Schmidt v. Chao, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004) (referring to the end of a three-month window as the "outer limit" of the "temporal requirement in a retaliation case"), *aff'd*, No. 04-5181, 2004 WL 2348142 (D.C. Cir. Oct. 19, 2004); Sullivan-Obst v. Powell, 300 F. Supp. 2d 85 (D.D.C. 2004) (finding that the over 15-month gap between the protected activity and the purported retaliatory action failed to establish the necessary causal link).  As a result, the significant amount of time that elapsed between Mr. Gross's protected activity and Akin Gump's filing of its Motion for Leave to Amend prevents Mr. Gross from proving causation, as a matter of law.

## III.    CONCLUSION

For the foregoing reasons, Akin Gump respectfully requests that the Court deny Plaintiff's Motion for Leave to Amend and Supplement his Complaint.

DATED: July 20, 2007                         Respectfully submitted,

                                             _____/s/_____
                                             Christine N. Kearns (Bar # 416339)
                                             Karen-Faye McTavish (Bar # 477588)
                                             Pillsbury Winthrop Shaw Pittman LLP
                                             2300 N Street, N.W.
                                             Washington, DC  20037
                                             Telephone: (202) 663-8000

                                             Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONALD G. GROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:07CV00399 (EGS) |
| | ) |
| AKIN GUMP STRAUSS HAUER & FELD LLP, | ) (ELECTRONICALLY FILED) |
| | ) |
| Defendant. | ) |

**ORDER**

UPON CONSIDERATION of the Plaintiff's Motion for Leave to Amend and Supplement Complaint, Defendant's opposition thereto, and the entire record in this case, it is this __ day of _____, 2007, by the United States District Court for the District of Columbia,

ORDERED, that Plaintiff's Motion is denied.

_____
The Honorable Emmet G. Sullivan

Copies to:

Christine N. Kearns, Esq.
Karen-Faye McTavish, Esq.
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037


Jonathan C. Puth, Esq.
Kataryna L. Baldwin, Esq.
WEBSTER, FREDRICKSON & BRACKSHAW
1775 K Street, N.W.
Suite 600
Washington, D.C. 20006

400604982v1