UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DONALD G. GROSS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-399 (EGS) |
| | ) | |
| AKIN GUMP STRAUSS HAUER & FELD LLP | ) | |
| | ) | |
| Defendant. | ) | |

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND
SUPPLEMENT COMPLAINT

In ruling on Plaintiff's Motion to Amend and Supplement his Complaint, there is no reason for this Court to depart from the well-established standard that leave to supplement or amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *City of Moundridge, KS v. Exxon Mobil Corp.*, 471 F. Supp.2d 20, 29 (D.D.C. 2007). "Leave is normally granted, especially when the opposing party is not prejudiced by the supplemental pleading." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995)(granting motion for leave to file supplemental complaint alleging retaliation count).

Departure from that doctrine would be particularly inappropriate here. For instance, Defendant argues that one of two counts of retaliation should be dismissed on grounds of failure to exhaust under the ADEA, but Plaintiff has since filed an administrative complaint and no purpose under the statute would be served by waiting 60 days to complete exhaustion, particularly where his D.C. Human Rights Act retaliation count (which has no exhaustion requirement) will go forward.

Second, Defendant reliance on non-controlling authority for the faulty proposition that a counterclaim cannot constitute retaliation must be rejected, particularly where all of Defendant's arguments are grounded in stale law that has been abrogated by the Supreme Court's more recent decision in *Burlington Northern & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405 (2006). Supreme Court and District of Columbia authority amply support Plaintiff's proposed retaliation complaints. Finally, Defendant urges the novel position that temporal proximity is a requirement – as a matter of law – to demonstrate the causation prong of a retaliation case. Defendant is wrong. Causation may be established in many ways, and Plaintiff can readily establish causation here.

## BACKGROUND

None of Defendant's "Background" recitation affects its purely legal (and faulty) arguments 1) that as a matter of law the ADEA retaliation claim requires administrative exhaustion; 2) that as a matter of law counterclaims cannot be retaliatory; and 3) that as a matter of law a four month delay cannot make out the causation prong for a retaliation suit. Nonetheless, Defendant's factual recitation omits several critical facts.

For instance, Plaintiff Gross was justified in communicating about Akin Gump's proposed representation of two prospective clients ("Prospective Client" and "Company X") due to his duty to those prospective clients. Among other matters not fully explored here, Akin Gump sought a $15,000 retainer from "Prospective Client," even though it knew that it could not fulfill "Prospective Client's" central aims for the representation. As well, Sukhan Kim sought to represent "Company X" in negotiations with "Company Y," despite the fact that "Company Y" was Kim's largest and

2

most important client, an obvious conflict. More specifically[1]:

- As of July 2004, Plaintiff Gross had worked assiduously to land "Prospective Client" as a client of Akin Gump (Deposition of Donald Gross, July 12, 2007 at 230-32);

- "Prospective Client's" principal aim in seeking Defendant's representation was to have Akin Gump's Funds Group help line up investors for "Prospective Client's" investment fund (*id*. at 253, 258);

- In July 2004, Defendant's Funds Group cancelled proposed meetings between "Prospective Client" and investors because the Funds Group decided that it would not be in a position to assist "Prospective Client" with "the very thing ["Potential Client"] came to Akin Gump for," namely, to line up potential investors (*id*. at 251-53);

- Also in July 2004, Prakash Mehta, an attorney in Defendant's Funds Group, informed Plaintiff Gross that Akin Gump "couldn't even be sure that they could find one investor would be interested" in "Prospective Client's" business, and implied that "helping a small fry with no track record was not of interest to the Funds Group" (*id*. at 251.);

- Notwithstanding its inability to fulfill the representation aims of "Prospective Client," Defendant Akin Gump still proposed that "Prospective Client" client sign on and pay a $15,000 retainer agreement for Akin Gump's services (*id*. at 263-65.);

- After discussing the matter with Jay Cohen, a key partner in the Korea Practice Group, Plaintiff Gross advised Prospective Client to hold off on signing the engagement letter because Akin Gump had made clear that it could not deliver the services that "Prospective Client" hoped to attain. (*id*. at 263-64.)

\*     \*     \*

- "Prospective Client" was the managing partner of and financial advisor to "Company X" in Korea (*id*. at 276);

- Jaemin Park, a partner in Defendant's Korea Practice Group, held both "Prospective Client" and "Company X" in great disdain, stating that she "regarded ["Prospective Client"] as a gangster" and "a wheeler dealer" and that the CEO of "Company X" "was even worse" (*id*. at 297);

---

[1] Defendant has indicated an interest in keeping the matters below confidential pursuant to the protective order in this case. Moreover, Defendant has offered purely legal, rather than factual, arguments in support of its Opposition. Therefore, the transcript of Plaintiff's deposition is not attached, but may be filed under seal if the Court requests.

- The largest and most important client of Sukhan Kim, the head of the Korea Practice Group, is "Company Y," a large Korean conglomerate (*see id*. at 297);

- Notwithstanding Kim's "huge conflict of interest" that precluded Kim from fairly representing "Company X," Kim wished to sign a retainer agreement with "Company X" in order to negotiate a deal between "Company X" and "Company Y," his largest client. (*Id*. at 297.)

Because of these infirmities, Plaintiff Gross communicated misgivings to these two prospective clients out of his duty to honestly and fairly represent their interests. Defendant's factual representations (and omissions) have no bearing on its purely legal arguments in opposition to Plaintiff's amendment. Moreover, for purposes of Plaintiff's Motion, all of the facts alleged in the Amended Complaint must be accepted as true. *Oneida Indian Nation of New York State v. County of Oneida, N.Y.*, 199 F.R.D. 61, 88 (N.D.N.Y. 2000). Based on the authority cited herein, Defendant cannot possibly prevail, and Plaintiff's Motion to amend his complaint to add counts for retaliation should be granted.

**I.  No purpose is served by delaying Plaintiff's ADEA retaliation count to await exhaustion.**

Plaintiff moved to amend his Complaint to add claims of retaliation under both the Age Discrimination in Employment Act ("ADEA") and District of Columbia Human Rights Act ("DCHRA"). (*See* Amended Complaint.) Only the ADEA contains an exhaustion requirement, thus Plaintiff's claim of retaliation will go forward under the DCHRA regardless of the disposition of the exhaustion question under the ADEA. *See Howard Univ. v. Best*, 484 A.2d 958, 978 n.20 (D.C. 1984)(no exhaustion requirement under DCHRA). Out of an abundance of caution, Plaintiff filed an ADEA retaliation charge with the EEOC on July 25, 2007, thus Plaintiff will have fully exhausted his administrative remedies on the ADEA count after the passage of just 60 days. *See* 29 U.S.C. §

626(d); 29 C.F.R. § 1626.18 (an aggrieved person may file a civil action at any time after 60 days have elapsed from the filing of the EEOC charge without waiting for a notice of dismissal or termination to be issued).  The question, therefore, is whether any purpose is served by waiting 60 days to add back the ADEA retaliation count to Plaintiff's DCHRA retaliation claim.[2]  Under the circumstances of this case, there clearly is not.  Defendant's exhaustion arguments should be rejected.

The basic rationale for the administrative exhaustion requirement is to provide notice to the alleged wrongdoer and to permit possible conciliation of claims.  *Foster v. Gueory*, 655 F.2d 1319, 1323 (D.C. Cir. 1981).  Neither purpose is served by delaying Plaintiff's ADEA retaliation claims by two months here.  First, Defendant has notice of the charges, and further notice is of no utility.  Second, there is no reason to believe further EEOC conciliation would succeed any more than it did following Plaintiff's original EEOC charge or in subsequent settlement efforts.  (*See, e.g.,* May 17, 2007 Minute Entry, reflecting settlement conference held before Judge Facciola.)

Plaintiff brought his Motion to add retaliation counts immediately after Akin Gump moved to pursue its unfounded torts claims against him, and Defendant did so at its first available opportunity.  In such a situation, any further exhaustion should be excused.  *See, e.g. Sullivan-Obst v. Powell*, 300 F.Supp.2d 85, 94-95 (D.D.C. 2004)(plaintiff could maintain retaliation claim despite fact she had not administratively exhausted that claim); *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.

---

[2] Filing charges with the EEOC is not a jurisdictional prerequisite to suit, but rather is subject to waiver, estoppel, and equitable tolling.  *Zipes v. Trans World Airline, Inc.*, 455 U.S. 385, 393 (1982).  Therefore, when "the reasons for supporting the [exhaustion] doctrine are found inapplicable, the doctrine should not be blindly applied." *Althlone Indus. v. Consumer Prod. Safety Comm'n,* 707 F.2d 1485, 1488 (D.C. Cir. 1983); *see also Cutler v. Hayes*, 818 F.2d 879, 890-91 (D.C. Cir. 1987)(exhaustion doctrine "should be applied flexibly, with an eye toward its underlying purpose").

1992)("separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge"). Moreover, a plaintiff's failure to exhaust an administrative remedy should be excused if the plaintiff cures the defect after filing his lawsuit. *See Williams v. Washington Metropolitan Area Transit Authority,* 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983); *accord Perry v. Beggs*, 581 F.Supp. 815, 816 (D.D.C. 1983).[3]

In the circumstances of this case, ample policy reasons support the allowance of the ADEA retaliation claim now (rather than less than two months from now). Encouraging piecemeal litigation would undercut the purposes of the exhaustion requirement and only serve to delay the inevitable litigation of Plaintiff's ADEA retaliation claim along with his DCHRA retaliation claim. Defendant's argument should be rejected.

## II.     Plaintiff's Amended Complaint States a *Prima Facie* Case of Retaliation.

Contrary to Defendant's claims, Plaintiff Gross easily makes out a *prima facie* case of retaliation under the ADEA and the DCHRA. Defendant's misguided reliance on non-controlling authority from other jurisdictions that a counterclaim cannot be an "adverse action" (Def. Opp. at 6-10), is based on doctrine that has never been accepted in this Court, and, indeed, which was abrogated by the recent Supreme Court decision in *Burlington Northern & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405 (2006).[4] Defendant's position on causation is similarly flawed.

---

[3]Defendant mistakenly claims that *Camp v. District of Columbia,* No. Civ.A. 04-234, 2006 WL 667956 (D.D.C. 2006), "is directly on point." (Def. Opp. at 5.) Unlike here, the plaintiff in *Camp* failed to timely amend her complaint until after the close of discovery, amending only in response to Defendant's motion for summary judgment. *Id.* at *8. By contrast, the early posture of this litigation would in no way prejudice Defendant.

[4]Courts interpreting the ADEA typically reply on the interpretation of the parallel anti-retaliation provision of Title VII. *Passer v. American Chemical Society*, 935 F.2d 322, 330 (D.C. Cir. 1991).

### A.  Defendant's filing of counterclaims is an adverse action.

Defendant's argument that counterclaims cannot be an adverse action is contrary to the Supreme Court's recent decision in *Burlington Northern & Santa Fe Ry. Co. v White,* ___ U.S. ___, 126 S. Ct. 2405 (2006).  Defendant's cases regarding its faulty proposition that the filing of counterclaims cannot be an adverse action <u>all</u> precede *Burlington Northern* and are simply bad law. The *Burlington Northern* decision swept away a broad swath of case law from numerous circuits, including most of the case law relied upon by Defendant.  *See Id.* at 2409-2411.  Defendant's authority has no vitality and must be rejected.

For instance, the Supreme Court in *Burlington Northern* overturned the "adverse action" doctrine of the Third, Fourth, Fifth, Sixth, and Eights Circuits, all of which had (wrongly) limited adverse actions to changes in the terms and conditions of employment.  *See Burlington Northern,* 126 S.Ct. at 2411-14; *id.* at 2414 ("The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm.").  Notwithstanding the Supreme Court's holding, Defendant urges this Court to adopt an abrogated doctrine.

For instance, Defendant relies on *Earl v. Electro Coatings of Iowa, Inc.*, No. C02-0042, 2002 WL 32172298 (N.D. Iowa Oct. 29, 2002), but that court rejected a counterclaim on the since-discredited grounds that "a former employee may claim retaliation based on his employer's post-termination conduct only if that conduct was employment related." *Earl*, 2002 WL 32172298, at *2. The Supreme Court in *Burlington Northern* expressly overruled such authority.  *Burlington Northern*, 126 S. Ct. at 2412 ("A provision limited to employment-related actions would not deter the many forms that effective retaliation can take.")  Similarly, Defendant claims support in *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528 (5th Cir. 2003) (*see* Def. Opp. at 9), but

that decision was based on the discredited holding that "[a] counterclaim . . . in no way resembles the ultimate employment decisions" that the Fifth Circuit previously required to show an adverse action. *Hernandez*, 321 F.3d at 533. That doctrine is also dead. *Burlington Northern*, 126 S.Ct. at 2414 ("We therefore reject the standards applied in the Courts of Appeals . . . that have limited actionable retaliation to the so-called 'ultimate employment decisions.'").

Abrogating the authority from those jurisdictions and others, the Supreme Court held that "the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." 126 S. Ct. at 2409. As explained by the Court:

> A provision limited to employment-related actions would not deter the many forms that effective retaliation can take. Hence, such a limited construction would fail to fully achieve the anti-retaliation provision's 'primary purpose,' namely, '[m]aintaining unfettered access to statutory remedial mechanisms.'

*Id*. at 2412 (*citing Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).

Defendant's failure to identify authority in this jurisdiction supporting its misguided claims is unsurprising. The Supreme Court in *Burlington Northern* adopted the standard from the D.C. Circuit that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern*, 126 S. Ct. at 2415 (citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)(internal quotes and cite omitted).) As well, contrary to Defendant's authorities, the D.C. Circuit has long held that an adverse action is not limited to employment actions. *Passer*, 935 F.2d at 331.

That leaves defendant's reliance on two non-controlling pre-*Burlington Northern* cases that offer the obtuse observation that a counterclaim cannot be an adverse action because it would not

dissuade an employee from filing a lawsuit after a lawsuit has already been filed. (Def. Opp. at 7-9, (citing *Timmerman v. U.S. Bank, N.A.*, 2006 WL 894894 (D. Colo. March 31, 2006), aff'd 483 F.3d 1106 (10th Cir. 2007)[5]; *Beltran v. Brentwood North Healthcare Center, LLC*, 426 F. Supp. 2d 827 (N.D. Ill. 2006).) Plaintiff respectfully suggests that such an odd doctrine would never gain a foothold in this jurisdiction, and completely lacks vitality after *Burlington Northern*. Retaliation complaints <u>always</u> pre-suppose a complaint of discrimination.

For instance, the Supreme Court in *Burlington Northern* carefully analyzed whether *after* Ms. White's complaint, the actions of the employer would have dissuaded a reasonable employee from filing a complaint. *Burlington Northern*, 126 S. Ct. at 2416-18. The question was not whether it would dissuade an employee from later filing a lawsuit, but rather whether the employer's actions were sufficient to dissuade an employee from making the complaint in the first instance. *See id.* Moreover, the purpose of the anti-retaliation provisions is not only to protect employees vindicating their rights, but also to prevent employers from "retaliat[ing] with impunity" in the future. *Robinson v. Shell Oil*, 519 U.S. 337, 346 (1997). Defendant's faulty reasoning must be rejected. A plaintiff simply does not lose his statutorily protected rights once he files a complaint in court.

Indeed, after *Burlington Northern*, many courts have found that post-litigation conduct reasonably constitutes an adverse action. In *Stanerson v. Colorado Boulevard Motors, Inc.*, No. 06-cv-00856, 2006 WL 3190520 (D. Colo. Nov. 2, 2006) (the same court that issued the *Timmerman* decision before *Burlington Northern* on which Defendant relies), for instance, the district court found

---

[5]Notably, in light of the intervening *Burlington Northern* decision, the Tenth Circuit in *Timmerman* refused to endorse the district court's view that a counterclaim may not constitute retaliation; rather it assumed that it could. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1123 (10th Cir. 2007).

the plaintiff could properly amend to add a retaliation count to his ADEA and ADA complaint based in part on the defendant's counterclaim, given the change in the law wrought by *Burlington Northern*. *Stanerson*, 2006 WL 3190520, at *3. Similarly, in *Steward v. Gonzales*, the court held that retaliatory conduct in the years following the plaintiff's lawsuit sufficiently stated a claim for retaliation, particularly where the Supreme Court had abrogated the Fifth Circuit's "ultimate employment action" requirement in *Burlington Northern*. *Steward v. Gonzales*, No. 03-1962, 2007 WL 647003, *15 n.42 (E.D. La. Feb. 28, 2007).

Contrary to Defendant's suggestion, many other courts have also found counterclaims the appropriate subject of a retaliation complaint. *See Rosania v. Taco Bell of America, Inc.*, 303 F.Supp.2d 878 (N.D. Ohio 2004)(employer's filing of counterclaim was adverse employment action for purpose of retaliation, and granting plaintiff's motion for leave to amend complaint); *Gill v. Rinker Materials Corp.*, No. 3:02-CV-13, 2003 WL 749911, at *5 (E.D. Tenn. Feb. 24, 2003)(counterclaim a proper subject of a retaliation count); *E.E.O.C. v. Outback Steakhouse of Florida*, 75 F. Supp. 2d 756 (N.D. Ohio 1999)(same); *Blistein v. St. John's Coll.*, 860 F.Supp. 256, 268 (D. Md. 1994)(counterclaims constitute an adverse action).

In sum, under *Burlington Northern*, an employer takes a "materially adverse action" against an employee for retaliation purposes when its actions "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern*, 126 S. Ct. at 2414-15. That is precisely the situation here. The potential chilling effect of a large employer's lawsuit against an individual for money damages is considerable. Defendant's arguments must be rejected.

**B.    Defendant's counterclaims are retaliation under the D.C. Human Rights Act.**

For all the breadth of federal anti-retaliation law, the law is even broader under the District of Columbia Human Rights Act. *Arthur Young & Co. v. Southerland*, 631 A.2d 354, 368 n.31 (1993)("Although most of the cases on retaliation involve retaliatory personnel actions . . . [§1402.61] provides very broad protection against retaliation of any kind.")[6] For instance, unlike federal law, the Act protects against actions taken "wholly or partially" for illegal reasons. *See* D.C. Code §§ 2-1402.11(a), 2-1402.61(a). As well, the statute defines adverse actions even more broadly as any action that would "coerce, threaten, retaliate against, or interfere with any person due to or in anticipation of protected activity." D.C. Code § 2-1402.61(a); *see also* 2-1402.61 (b) & (c).

The *Arthur Young* case is particularly pertinent here. There, a jury verdict was affirmed where the defendant was found to have retaliated by filing to foreclose on a loan *after* the plaintiff had filed her lawsuit alleging discrimination. *Arthur Young*, 631 A.2d at 359, 365-70. The defendant argued that because it had every right to foreclose on the loan, it presented a legitimate business reason for its decision and could not be retaliation as a matter of law. The District of Columbia Court of Appeals rejected Defendant's argument as inconsistent with the DCHRA. *Id*. at 367 ("The law contains no safe harbor for otherwise lawful acts done for a retaliatory purpose.") The Court so ruled, even though it was "undisputed that Young presented evidence of a legitimate business reason to foreclose" on the loan. *Id*. at 368-69.

Defendant's premature claims of "good faith" and entitlement to bring its counterclaims

---

[6]The Court noted that even a verbal threat was enough to establish an adverse action under the DCHRA. *Id*. (citing *Atlantic Richfield Co. v. District of Columbia Com'n on Human Rights*, 515 A.2d 1095, 1101 (D.C. 1986)(threat that employee "would never work in the District of Columbia again" sustains retaliation claim under DCHRA).

11

cannot undermine the propriety of Plaintiff's claims under the DCHRA.  Even if Akin Gump had some legitimate reason for its counterclaims (which it does not), the filing of the counterclaims would still be illegal under the DCHRA if taken for an improper motive.  *Id*.

    **C.**    **Plaintiff can establish causation between his protected activity and Defendant's counterclaims.**

Defendant's sole argument on causation is that a four month gap between Plaintiff's district court complaint and Defendant's retaliatory conduct cannot demonstrate causation "as a matter of law." (Def. Opp. at 10-11.)  Defendant cites a number of cases, but nowhere is there found such an extraordinary holding.  Defendant's argument for a new sweeping rule of law must be rejected.

Defendant filed his motion to add counterclaims only four months after Plaintiff filed his Complaint and, significantly, at its very first opportunity, which alone can establish Plaintiff's retaliation claim.  Defendant admits that it took its first opportunity to move to countersue within a few weeks or even just days of allegedly finding some basis for doing so.  (*See* Defendant's Motion to Amend Answer and File Counterclaims, June 25, 2007 at 6, ¶21.)  Contrary to Defendant's suggestion, therefore, its actions readily demonstrate causation here.  *See Porter v. California Department of Corrections*, 419 F.3d 885, 895 (9th Cir. 2005)(finding sufficient evidence of causation, despite more than two years between plaintiff's complaint and adverse action, where supervisor retaliated at first available opportunity).

Contrary to Defendant's suggestion, there is no requirement that a plaintiff demonstrate a temporal connection to show causation.  Temporal proximity "is but one method of proving retaliation." *Buggs v. Powell*, 293 F.Supp.2d 135, 149 (D.D.C. 2003) (quoting *Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003)).  While temporal connection alone may establish

retaliatory intent, a lapse of time between the protected activity and the adverse action does not undermine causation. As noted by the Third Circuit:

> It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.

*Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 178 (3rd Cir. 1997)(improper to concentrate exclusively on the gap between the protected activity and the adverse action). The D.C. Circuit is no different; the Court has never required that a plaintiff demonstrate temporal proximity, but rather that a plaintiff prove that "the adverse action was causally related to the plaintiff's exercise of protected rights." *See Passer*, 935 F.2d at 331. Defendant's exhortation for a new rule requiring temporal proximity must be rejected.

Contrary to Defendant's theory, a long period between a protected activity and the adverse action fails to disprove causation. *See Barry v. United States Capitol Guide Board*, No. 04-0168, 2005 WL 1026703, at *5-6 (D.D.C. May 2, 2005)(sufficient evidence of causal connection found despite a six year gap between plaintiff's protected activity and adverse action); *Coates v. Dalton*, 927 F.Supp. 169, 170 (E.D.Pa. 1996)("four-year time lapse between plaintiff's non-promotion and his EEO filing is not legally conclusive proof that no retaliation occurred. [citations omitted] If it were, an employer could avoid liability for retaliation simply by waiting to punish an employee who had engaged in protected EEOC activity."); *Cuffy v. Texaco Ref. & Mktg. Co.*, 684 F.Supp. 87, 94-95 (D. Del. 1988)(adverse action occurred almost two years after protected conduct but during pendency of EEOC investigation); *Gee v. Principi*, 289 F.3d 342, 347 n.3 (5th Cir. 2002)(protected activity

two years prior to adverse action).[7]

The fact is, the law recognizes several methods of demonstrating causation aside from temporal proximity. For instance, a plaintiff may also demonstrate retaliation by showing a pattern of antagonism between the time of the protected activity to the retaliatory acts. *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265, 288-89 (3d Cir. 2001)(intervening antagonism demonstrates "ample proof" of causation); *Barry*, 2005 WL 1026703 at *5-6 ("pattern of antagonism" over course of six year lapse between protected activity and adverse action sufficient to demonstrate causation); *Buggs*, 293 F.Supp.2d at 149 (pattern of antagonism demonstrates causation where a seven month gap between protected conduct and adverse action). In this case, there has been a clear pattern of antagonism; the parties were litigants on opposite sides of this case throughout the four month period. Their interests have been completely adverse during that time.

Temporal proximity or intervening antagonism are not the sole ways to demonstrate causation. In *Blistein*, for instance, the court noted that in the case of a counterclaim brought by a defendant in an age discrimination case, the causal connection between the district court complaint and the adverse action is apparent on its face. *See Blistein*, 860 F.Supp. at 268. Here, Akin Gump

---

[7]Defendant overstates the significance of its cited authority. In *Cheek v. Chertoff*, the district court rejected a causal connection between plaintiff's EEOC activity and her reassignment primarily because she presented no evidence that the relevant official knew she had contacted the EEO office. *Cheek*, No. Civ.A. 04-251, 2006 WL 695829, at *10 (D.D.C. March 17, 2006). As well, and as with all cases that closely examine the issue, Defendant's other cited authority emphasize that a close temporal proximity is relevant for purposes of causation <u>only</u> if the plaintiff (unlike plaintiff here) relies upon the proximity <u>alone</u> to establish causation. *Gustave-Schmidt v. Chao,* 360 F.Supp.2d 105, 118 (D.D.C. 2004); *Sullivan-Obst*, 300 F.Supp.2d at 95 (no evidence aside from timing offered); *Mayers v. Health & Safety Fund of N. America,* 478 F.3d 364, 369 (D.C. Cir. 2007)(noting that "causation can *sometimes* be inferred by temporal proximity."); *Willingham v. Gonzales*, 391 F.Supp.2d at 52 (in instances "where a court is asked to accept mere temporal proximity" alone as evidence of causation, the time period must be very close.)

14

would not even have had a legal claim against Plaintiff unless Plaintiff had brought his age discrimination suit and the parties began discovery. Defendant moves to seek damages from Plaintiff in this very lawsuit on facts intertwined with the case; the causal connection is apparent.

Moreover, Plaintiff can also demonstrate causation by offering "evidence of retaliatory intent." *Yankelevitx*, 1996 WL 447749 at *6 (citing *Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990)). At this stage, in addition to being unsupported in the law, Defendant's argument for a *per se* rule as a matter of law requiring temporal proximity is particularly inappropriate regarding a fact-bound inquiry such as Defendant's retaliatory intent. Whether an employer had a retaliatory motive is a fact question for a jury, "and, like other types of claims in which motive or intent is in issue, is not well suited to disposition on a [dispositive] motion." *Arthur Young & Co.*, 631 A.2d at 368(citing cases); *Barry*, 2005 WL 1026703 at *5-6 (determination on of whether defendant acted with retaliatory intent despite six year lapse is a question "best left to a fact-finder").

Defendant's claim that as a matter of law retaliation suits may not be brought after three months is baseless. In this Circuit and elsewhere, courts require a showing of a causation, not temporal proximity. *See Passer*, 935 F.2d at 331. Moreover, even if Defendant had a legitimate purpose for its counterclaims (which it does not), they would still be improper if brought for a retaliatory purpose. *Arthur Young & Co.*, 631 A.2d at 368-69. Defendant's novel encouragement of a new rule of law must be rejected.

**CONCLUSION**

Defendant's novel legal arguments should be rejected. Plaintiff respectfully requests that this Court grant his Motion to Amend.

                              Respectfully Submitted,

                              WEBSTER, FREDRICKSON, HENRICHSEN, CORREIA & PUTH, P.L.L.C.

                              */s/   Jonathan C. Puth*
                              Jonathan C. Puth  #439241
                              Kataryna L. Baldwin  #494439
                              1775 K Street, N.W.
                              Suite 600
                              Washington, D.C.  20006
                              (202) 659-8510

                              Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

      I hereby certify that on this **30th** day of July, 2007, a copy of the forgoing Plaintiff's Reply in Support of His Motion to Amend and Supplement Complaint was served by electronic filing to:

Christine Nicolaides Kearns
Karen-Faye McTavish
Pillsbury Winthrop Shaw Pittman, LLP
2300 N St., N.W.
Washington, DC  20037

Counsel for Defendant


         */s/   Kataryna L. Baldwin*
        Kataryna L. Baldwin
        Webster, Fredrickson, Henrichsen, Correia & Puth, PLLC
        1775 K Street, N.W.
        Suite 600
        Washington, D.C.  20006
        (202) 659-8510

        Attorney for Plaintiff