IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD G. GROSS,                              ) | |
|                                               ) | |
|             Plaintiff,                        ) | |
|                                               ) | |
|     v.                                        ) | Case No. 1:07CV00399 (EGS) |
|                                               ) | |
| AKIN GUMP STRAUSS HAUER & FELD LLP,           ) | |
|                                               ) | |
|             Defendant.                        ) | |
|                                               ) | |

### ERRATA TO STATEMENT OF UNDISPUTED FACTS

Defendant Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), through counsel, respectfully submits this Errata to its November 2, 2007 Statement of Undisputed Material Facts Pursuant to Local Rule of Civil Procedure 56.1 (the "Statement"); substituting the page attached hereto as Exhibit A for page 15 of the Statement. Defendant inadvertently omitted the word "not" in Paragraph 55 of the Statement. As the sworn record testimony originally cited in Paragraph 55, and originally attached to the Statement at Exhibits 2 and 3 (attached hereto as Exhibit B for the Court's convenience) demonstrates, Paragraph 55 should read "Mr. Kim did not recommend that Akin Gump terminate Mr. Gross's employment. Kim Dep. at 129:13-19; McLean Dep. at 26:8-28:11."

DATED: December 19, 2007         Respectfully submitted,

                                  /s/
                                 Christine N. Kearns  (Bar # 416339)
                                 Karen-Faye McTavish (Bar # 477588)
                                 PILLSBURY WINTHROP SHAW PITTMAN LLP
                                 2300 N Street, N.W.
                                 Washington, D.C.  20037-1128
                                 (202) 663-8000
                                 *Counsel for Defendant*

400690375v1

was working under a one-year contract and my decision was we were not going to extend that, that we needed to communicate to Mr. Gross that we were not going to extend the relationship beyond the one year that was in his agreement and that – and that that ought to be communicated to Mr. Gross immediately." McLean Dep. at 25:6-26:7.

54.     On July 9, 2004, Mr. Burdick wrote to Mr. McLean and addressed the need to "deal with some of the idle resources, like don gross." McLean Dep. Exhibit 49.

55.     Mr. Kim did not recommend that Akin Gump terminate Mr. Gross's employment. Kim Dep. at 129:13-19; McLean Dep. at 26:8-28:11.

56.     Mr. McLean did not discuss Mr. Gross's termination with Mr. Kim before making the decision to terminate Mr. Gross. McLean Dep. at 26:17-27:5; Kim Dep. at 130:7-13.

57.     Mr. Kim did not discuss the termination of Mr. Gross's employment with Mr. Quigley prior to Mr. McLean making the termination decision. Kim Dep. at 130:14-131:12.

58.     During the summer 2004, Mr. McLean also decided to require the withdrawal from the partnership of an income partner (date of birth October 31, 1963) (the "Income Partner (under 40)") in the Korea Practice Group. McLean 34:4-12; 50:20-53:3; McLean Dep. Exhibit 43. The decision to terminate the Income Partner (under 40), like the decision to terminate Mr. Gross's employment, was based, in part on low productivity. Kim Dep. at 111:19-112:2.

59.     On August 11, 2004, Mr. McLean sent an email to Mr. Kim and Mr. Quigley summarizing Mr. McLean's previous decision regarding "at least two personnel actions that need to be addressed immediately. Gross ought to be resolved by October 31 and [Income Partner (under 40)] by year end." McLean Dep. Exhibit 43.

15

VIDEOTAPED DEPOSITION OF ROBERT BRUCE MCLEAN
CONDUCTED ON THURSDAY, AUGUST 30, 2007

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - x
                          :
DONALD G. GROSS,          :
                          :
         Plaintiff,       :
                          : Civil Action No.
v.                        : 07-399 (EGS)
                          :
AKIN, GUMP, STRAUSS,      :
HAUER & FELD, LLP         :
                          :
         Defendant.       :
                          :
- - - - - - - - - - - - - x

Videotaped Deposition of

ROBERT BRUCE McLEAN

Washington, DC

Thursday, August 30, 2007

9:03 a.m.

Job No.: 1-109380

Pages 1 through 90

Reported by: Rebecca L. Stonerock, RPR

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202)861-3410  (800)292-4789  (301)762-8282  (703)288-0026  (410)539-3664

VIDEOTAPED DEPOSITION OF ROBERT BRUCE MCLEAN
CONDUCTED ON THURSDAY, AUGUST 30, 2007

Page 26

1  Mr. Gross was working under a one-year contract
2  and my decision was we were not going to extend
3  that, that we needed to communicate to Mr. Gross
4  that we were not going to extend the relationship
5  beyond the one year that was in his agreement and
6  that -- and that that ought to be communicated to
7  Mr. Gross immediately.
8      Q   So do I understand correctly that you
9  brought up the decision to terminate Donald Gross
10 with Mike Quigley?
11     A   That's correct. That's my
12 recollection.
13     Q   And that was prompted by your
14 communications with Val Slater regarding her
15 concerns about billable hours?
16     A   Correct.
17     Q   Did you have any discussions with
18 Sukhan Kim about the decision to terminate Donald
19 Gross?
20     A   I may have had a discussion with
21 Mr. Kim at some point in time. In fact, it's
22 likely that I would have had a conversation with

Page 27

1  Mr. Kim at some point in time, but I did not have
2  a discussion with Mr. Kim prior to making the
3  decision to terminate Mr. Gross or at the same
4  time that I made the decision to terminate
5  Mr. Gross.
6      Q   All right. Now, I believe you had
7  testified, and correct me if I'm wrong, that you
8  made the decision to terminate Don Gross in
9  response to Val Slater's concerns about his
10 billable hours in the international group. Is
11 that right?
12     A   Well, I think what I testified was it
13 was two things. It was -- it was Ms. Slater's
14 concern about his billable hours, and then
15 subsequently in the discussion with Mr. Quigley
16 one of -- I think a very important part of this
17 was that Mr. Quigley's assessment was that
18 Mr. Gross was not performing either. That was
19 one of the reasons that his billable hours were
20 low.
21     Q   And that was a discussion that you had
22 after your communications with Val Slater?

Page 28

1      A   Correct.
2      Q   Okay. And what do you recall about
3  your discussion with Mr. Quigley regarding Don
4  Gross's performance?
5      A   Well, I asked him why Mr. Gross's
6  performance was so far below what we had expected
7  and Mr. Quigley said, "He hasn't worked out," and
8  then I said, "You need to terminate Mr. Gross."
9      Q   That's the full substance of what you
10 recall?
11     A   That's what I recall.
12     Q   Now, do you understand that Val Slater
13 had any managerial responsibilities over Donald
14 Gross?
15     A   Val Slater was the practice manager in
16 the practice that we're -- Mr. Gross was
17 resident, and she would have had both the
18 responsibility and accountability to me for the
19 performance of the group, including Mr. Gross's
20 performance.
21     Q   Did you also have a discussion with
22 Mr. Quigley about the -- strike that.

Page 29

1          MR. PUTH: Let's have these marked as
2  Deposition Exhibits 46 and 47, please.
3          (Exhibit Nos. 46 and 47 were marked
4  for identification and attached to the
5  deposition transcript.)
6  BY MR. PUTH:
7      Q   Mr. McLean, the court reporter is
8  handing you what has been marked as Deposition
9  Exhibits 46 and 47. I'll ask you to review those
10 for identification.
11     A   (Complying.)
12     Q   Have you had a chance to review
13 Deposition Exhibits 46 and 47?
14     A   I have.
15     Q   What is Deposition Exhibit 46?
16     A   Forty-six is a letter of resignation
17 by            to David Allen.
18     Q   And who is David Allen?
19     A   David Allen is the partner in charge
20 of our Los Angeles office.
21     Q   And Deposition Exhibit 47, can you
22 identify that, please?

REDACTED

VIDEOTAPED DEPOSITION OF SUKHAN KIM
CONDUCTED ON FRIDAY, SEPTEMBER 7, 2007

1 (Pages 1 to 4)

**Page 1**

```
 1    IN THE UNITED STATES DISTRICT COURT
 2        FOR THE DISTRICT OF COLUMBIA
 3
 4   DONALD G. GROSS,
 5        Plaintiff,       Civil No.
 6   vs.                   07-399 (EGS)
 7   AKIN GUMP STRAUSS HAUER & FELD LLP,
 8        Defendant.
 9                - - -
10        VIDEOTAPED DEPOSITION OF SUKHAN KIM
11              Washington, D.C.
12              September 7, 2007
13   The videotaped deposition of Sukhan Kim was
14   convened on Friday, September 7, 2007,
15   commencing at 10:07 a.m., at the offices of
16   Webster Fredrickson Henrichsen Correia & Puth,
17   1775 K Street, N.W., Suite 600, Washington,
18   D.C., before Paula G. Satkin, Registered
19   Professional Reporter and Notary Public.
20   Job No. 1-109382
21   Pages 1 - 168
22                - - - -
```

**Page 2**

```
 1           APPEARANCES
 2
 3   ON BEHALF OF THE PLAINTIFF:
 4   JONATHAN C. PUTH, ATTORNEY AT LAW
 5   KATARYNA L. BALDWIN, ATTORNEY AT LAW
 6   WEBSTER FREDRICKSON HENRICHSEN
 7   CORREIA & PUTH, PLLC
 8   1775 K Street, N.W., Suite 600
 9   Washington, D.C. 20006
10   (202) 659-8510
11
12   ON BEHALF OF THE DEFENDANT:
13   CHRISTINE NICOLAIDES KEARNS, ATTORNEY AT LAW
14   PILLSBURY WINTHROP SHAW PITTMAN, LLP
15   2300 N Street, N.W.
16   Washington, D.C. 20037
17   (202) 663-8000
18
19
20    and
21
22
```

**Page 3**

```
 1        APPEARANCES (Cont'd)
 2
 3   JULIE STUMPE DRESSING, CHIEF HUMAN RESOURCES
 4   OFFICER and HUMAN RESOURCES COUNSEL
 5   AKIN GUMP STRAUSS HAUER & FELD LLP
 6   Robert S. Strauss Building
 7   1333 New Hampshire Avenue, N.W.
 8   Washington, D.C. 20036-1564
 9   (202) 887-4000
10
11   ALSO PRESENT:
12   DAVID BAYLES, VIDEOGRAPHER
```

**Page 4**

```
         C O N T E N T S

    SUKHAN KIM          EXAMINATION

    BY MR. PUTH..................6

    AFTERNOON SESSION...............98

         E X H I B I T S

    EXHIBIT NO:            PAGE NO:

    51 - E-mail, 10/13/04.................76
    52 - E-mail, 10/15/04.................81
    53 - E-mail, 9/24/04..................93
    54 - E-mail, 8/12/04..................99
    55 - E-mail, 9/20/04.................103
    56 - E-mail, 9/27/04.................108
    57 - Dept of Commerce article........120

    ** Exhibit retained by counsel.
```

VIDEOTAPED DEPOSITION OF SUKHAN KIM
CONDUCTED ON FRIDAY, SEPTEMBER 7, 2007

33 (Pages 129 to 132)

129

```
 1         THE WITNESS: Clearly. Yes.
 2   BY MR. PUTH:
 3       Q.  And if -- is it your observation
 4   that Koreans may be apt in social settings to
 5   ask a relative stranger what their age is?
 6       A.  Yes.
 7       Q.  Is that relatively common in Korea
 8   from what you've seen?
 9       A.  Yes.
10       Q.  And that would be a difference
11   from American culture; correct?
12       A.  In my view. Yes.
13       Q.  Did you recommend termination of
14   Don Gross?
15       A.  Don's termination?
16       Q.  Yes.
17       A.  No.
18       Q.  No?
19       A.  No.
20       Q.  Did you discuss Don's termination
21   with anyone else at Akin Gump?
22       A.  No.
```

130

```
 1       Q.  Did you meet with Don Gross about
 2   the decision to terminate his employment?
 3       A.  When the firm made a decision,
 4   yes, I have.
 5       Q.  We'll come back to that.
 6       A.  Okay.
 7       Q.  How about -- if I understand you
 8   correctly, you didn't have a discussion with --
 9   you're saying you didn't have a discussion with
10   Bruce McLean about Don Gross' termination?
11       A.  When?
12       Q.  Prior to his termination?
13       A.  No.
14       Q.  And did you discuss the
15   possibility of terminating Don Gross with Mike
16   Quigley?
17       A.  No.
18       Q.  And that's prior to the time the
19   decision was made to terminate him?
20       A.  I don't recall the timing, but
21   basically, the reason why I keep saying no is
22   that I was trying to keep him there, trying to
```

131

```
 1   find a position there and tried to extend it.
 2   That would be contrary to termination.
 3           So, from one perspective, I don't
 4   know how you see it, but as I see it, I was
 5   trying to find a place at Akin Gump where there
 6   might be a suitable position for Don because Don
 7   has certain talents. So I was looking for that
 8   position.
 9           And then, second, at the same time
10   I tried to extend his stay as long as I could,
11   so instead of firing, I was trying to keep him
12   there as long as I can at Akin Gump.
13       Q.  Now, I want to get back to a
14   meeting that you had with Don Gross. Let's say
15   the first meeting that you had with Don Gross in
16   which the subject of his departure from the
17   Korea Practice Group was discussed.
18           Do you have a recollection of
19   that?
20       A.  Without Don?
21       Q.  With Don?
22       A.  Yes. I do.
```

132

```
 1       Q.  And?
 2       A.  In my office.
 3       Q.  Do you know when that was?
 4       A.  I would have to guess, but summer.
 5       Q.  Don't guess.
 6       A.  Don't guess. Okay.
 7       Q.  What's your best estimate?
 8           MS. KEARNS: Best memory.
 9           THE WITNESS: Best memory. July
10   or August.
11   BY MR. PUTH:
12       Q.  Okay. Of 2004?
13       A.  Yes.
14       Q.  And what do you recall about that
15   meeting with Don Gross?
16       A.  I told him that McLean said he had
17   to leave. And he gave me a certain date, but I
18   don't recall, whether it's the 16th or 30th, I'm
19   not sure. And then I told him that, but since
20   he has no job, I'll try to go back to Bruce and
21   try to extend it as long as I could. And then
22   I -- in other words, tell you what we discussed.
```