IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD G. GROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:07CV00399 (EGS) |
| ) | |
| AKIN GUMP STRAUSS HAUER & FELD LLP, ) | |
| ) | |
| Defendant. ) | |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), through counsel, submits this Notice of Supplemental Authority.

Akin Gump filed its motion for summary judgment on November 2, 2007. Recently, the District of Columbia Court of Appeals decided a case that has direct bearing on Defendant's motion, Furline v. Morrison, Nos. 04-CV-1029 & 04-CV-1114, 2008 D.C. App. LEXIS 334 (D.C. App. July 24, 2008).

In Furline, the Court reversed a jury verdict for an employee in a case involving an age discrimination claim under the District of Columbia Human Rights Act ("DCHRA"). In Furline, the plaintiff employee had alleged that she was the victim of discrimination in violation of the DCHRA because she was suspended from her job after her supervisor, Mr. Furline, recommended her suspension, allegedly in retaliation against her for lodging an age discrimination complaint against him, and also because of the same supervisor's discriminatory animus against older employees in his department. Apparently, in response to a screensaver message left on a computer in the area where plaintiff worked asking why younger employees

were (supposedly) being paid more than older employees, Mr. Furline put up a response screensaver message stating that younger employees were being paid more because "they are younger, dependable, and more productive, that's why!," and later commented, "I would like to see the expression on [plaintiff's] face when she sees this." Id. at *5.

The Court overturned a jury verdict for the employee, explaining that, even assuming that Mr. Furline had recommended the plaintiff's suspension for retaliatory and/or discriminatory reasons, it was other managers who decided to suspend the plaintiff's employment after an independent investigation. Specifically, the other managers suspended the plaintiff after a review of her attendance record made clear that she had been absent a significant number of days in a suspicious pattern (almost always on Fridays or Mondays, extending her weekend), and that, after being warned about her attendance issues, had failed to show up on a holiday that she had been scheduled to work—which she had repeatedly requested off, but was told that her requests were denied. The Court found that even if the catalyst for the independent review was the recommendation for suspension by an improperly biased supervisor, the fact that the decision was made by others, after an independent review of the circumstances, and that there was no evidence that the decisionmakers held any improper motives, meant that the suspension decision was not discriminatory. Furline, 2008 D.C. App. LEXIS 334 at *18 ("Even if Furline's recommendation was vindictive or discriminatory (which he denies), the review process ensured that [plaintiff] was disciplined solely for the legitimate reason given").

The Court explained that even if the plaintiff was correct that discriminatory animus motivated Mr. Furline in recommending her suspension:

> Furline was not the decisionmaker. Nor were his fellow supervisors or
> their immediate supervisor, Zachariah. While those individuals forwarded

2

> the recommendation for [plaintiff's] suspension up the line, the decision was made at a higher level – by the Assistant Director of Human Resources in conjunction with other senior officials. For [plaintiff] to prevail, therefore, the record must contain evidence that either (1) the actual decisionmakers had retaliatory or discriminatory reasons for suspending her, or (2) their decision was tainted by Furline's involvement or influence.

Id. at **28-9.  The Court found that neither situation applied.

First, "[t]here . . .[was] no evidence that any of [plaintiff's] superiors (other than Furline) was biased against older employees or motivated to take adverse action against [plaintiff] for discriminatory or retaliatory reasons." Id. at *15.  In fact,

> there is no evidence in the record to show [] that the senior officials who imposed her five-day suspension did so on a pretext, or for any reason besides the one given. . . .  Nor is there record support for a finding that any of the actual decisionmakers has impermissible reasons to discipline [plaintiff]. . . .  Similarly, there is no evidence they treated [plaintiff] differently from younger, similarly situated employees, or otherwise manifested a discriminatory animus based on age.

Id. at **29-30.

Second, the Court explained that "the critical question," with respect to whether a decisionmaker's decision is "tainted" by the influence of a biased subordinate, "is not whether a biased subordinate had *input*, but whether he had *impact*." Id. at *33 (emphasis in original).  As the Court further explained, such impact is present where, for example, a review committee or other formal decisionmaker relies on a subjective evaluation or misinformation supplied by the biased low-level supervisor. Id.

The Furline Court held that, by conducting an independent investigation, an employer avoids liability that may otherwise attach if the ultimate decisionmaker relies exclusively on the

3

say-so of a biased supervisor in reaching an employer decision.  Id. at \*\*30-38.  As the Court found:

> The foregoing principles were developed under Title VII and related federal civil rights laws, but we think they are applicable to, and appropriate for, employment discrimination and retaliation actions under the DCHRA as well.  The pertinent issue under our local law is whether the employer took an adverse personnel action "for a discriminatory [or retaliatory] reason."  That standard is met when the action is induced by and effectuates the illicit design of a lower-level supervisor, even if the implementing officials are an unwitting conduit.  <u>On the other hand, the standard is not met when the deciding authorities independently determine that the action is warranted for permissible reasons, even if the catalyst for their review was the report by a biased subordinate.</u>

Id. at 38 (emphasis added).

In the case before this Court, Mr. Gross has based his age discrimination claims under the Age Discrimination in Employment Act and the DCHRA on alleged discriminatory animus and discriminatory comments made by Sukhan Kim.[1]  It is undisputed, however, that Bruce McLean, Chairman of Akin Gump, made the decision to terminate Mr. Gross's employment.  See Statement of Undisputed Material Facts at ¶¶ 48-53.  It is also undisputed that Mr. McLean made this decision without ever discussing his decision with Mr. Kim or Mr. Quigley.  Id. at ¶¶ 56-57.  Thus, unlike Furline, the record is clear that Mr. Kim did not even recommend that Mr. Gross be terminated.  Id. at ¶¶ 55-57.[2]  Even if Mr. Kim had recommended the termination, however, (which he did not), and even if he had discriminatory animus (which he did not), Mr. McLean conducted an independent investigation of Mr. Gross's performance and decided that it was substandard.  Id. at ¶¶ 48-59.  This included a review of Mr. Gross's poor billable hours as

---

[1] Mr. Gross also alleges discriminatory animus on the part of Michael Quigley.

[2] Paragraph 55 of Defendant's Statement of Undisputed Material Facts was corrected via an Errata filed on December 19, 2007.  As the sworn testimony originally cited in Paragraph 55 demonstrates, Paragraph 55 should read "Mr. Kim did not recommend that Akin Gump terminate Mr. Gross's employment."

4

brought to Mr. McLean's attention by Val Slater, head of the group at Akin Gump in which Mr. Gross had been placed (who is older than Mr. Gross), and Rick Burdick, Partner in Charge of the Washington D.C. office (who is also older than Mr. Gross). Id. at ¶¶ 38; 50-54. There is absolutely no evidence in the record of any discriminatory animus on the part of Mr. McLean, nor for that matter, on the part of Ms. Slater or Mr. Burdick.

In motions practice in this case, and in response to a prior Notice of Supplemental Authority, Plaintiff has baldly asserted that the record contains ample proof of bias on the part of Mr. McLean. Plaintiff has not, however, pointed to any evidence in the record that Mr. McLean had any bias against Mr. Gross (who is younger than Mr. McLean), because of age. Should the Court request a response to this submission, Defendant invites Mr. Gross to point specifically to any such evidence in the record to support that assertion against Mr. McLean. As in Furline, there is simply no evidence that Mr. McLean made the decision to terminate Mr. Gross's employment because of his age.

As the Court explained in Furline:

> Usually a prima facie case plus sufficient evidence to reject the employer's explanation will suffice without more to overcome a motion for summary judgment as a matter of law. But the emphasis is on the need for *evidence*: "As courts are not free to second-guess an employer's business judgment, a plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding an employer's articulated reasons for its decisions."

Id. at *27 (emphasis in original) (citations omitted).

For these reasons, Defendant provides the Court with this Notice of Supplemental Authority.

Dated:  August 7, 2008

Respectfully submitted,

              /s/
Christine N. Kearns (Bar #416339)
Karen-Faye McTavish (Bar # 477588)
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C.  20037-1128
(202) 663-8000
Counsel for Defendant