IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD G. GROSS )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AKIN GUMP STRAUSS HAUER & FELD LLP )<br>)<br>Defendant. )<br>) | Civil Action No. 07-399 (EGS/JMF) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
SECOND NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendant attempts again to mount an "independent decisionmaker" defense in this case where Akin Gump previously admitted that there were multiple decisionmakers. (*See* Notice of Supplemental Authority, August 7, 2008 ("Notice").) Defendant calls attention to a recent decision in which the District of Columbia Court of Appeals interpreted the District of Columbia Human Rights Act ("DCHRA") to find no discrimination in a case where, unlike here, a biased subordinate merely recommended suspension of the plaintiff and there was no evidence he played a role in the decision. *See Furline v. Morrison,* 2008 WL 2827467 (D.C.)[1] Moreover, and also unlike here, there was no evidence in *Furline* that the decisionmakers harbored any bias or gave pretextual reasons for their decision. *Id.* at *7. In this case, in complete contrast to *Furline*, there is direct evidence that two decisionmakers were biased; there is indirect evidence that a third decisionmaker was biased; and there is abundant evidence that Defendant's stated reasons for the termination were pretextual. (*See* Plaintiff's Opposition to Summary Judgment, December 11, 2007 (Docket Entry No.

---

[1] Plaintiff Gross brings this case under both the DCHRA and the Age Discrimination in Employment Act ("ADEA"). *Furline* is not binding authority for this Court's application of the ADEA.

34)("Opp.").) *Furline* does not apply.

First, Defendant attempts to set up Akin Gump partners Kim and Quigley as merely biased subordinates akin to the lower level supervisor in *Furline*. Defendant repeats its claim that it is "undisputed" that McLean alone made the decision to terminate Mr. Gross (Notice at 4), but these claims are disputed. Kim and Quigley did not merely recommend termination; they were decisionmakers. In Defendant's own words from its submission to the EEOC:

- Kim was one of the "individuals who terminated Mr. Gross." (Opp. Ex. 6 at 11);

- Quigley was one of the "individuals who terminated Mr. Gross." (*Id.*);

- "Mr. Kim, Mr. Quigley, and Mr. McLean all participated in . . . the decision to terminate Mr. Gross." (*Id.* at 10);

- Quigley and McLean "both participated in the . . . firing decision." (*Id.*);

- Referring to Kim, Quigley, and McLean, it was "their decision to terminate [Mr. Gross]." (*Id.*);

- The decision to terminate Mr. Gross "was formalized when Mr. McLean and Mr. Quigley met to discuss the Korea practice." (*Id.* at 5).

Defendant has now changed its story, claiming that Kim and Quigley played no role in the decision to terminate Mr. Gross and that McLean never spoke to either about the decision. A jury is not required to accept Defendant's new and contradictory version of the facts, but may instead conclude that Kim and Quigley are decisionmakers (as Defendant initially admitted). A jury could reject McLean's self-serving testimony to the contrary. *See Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 130, 151 (2000) (on summary judgment the court "must disregard all evidence favorable to the moving party that the jury is not required to believe.").

Second, in contrast to *Furline*, the record is replete with evidence of pretext from which a

jury could find that the decisionmakers were motivated by age. Both Kim and Quigley flatly told Mr. Gross that he was being terminated because he was "too old." (Opp. at 12-13, 27). Where two of the partners "who terminated Mr. Gross" (Opp. Ex. 6 at 11) admitted the reason was his age, there is direct evidence of discrimination and summary judgment must be denied. *See Weathersby v. Secretary of the Interior*, 242 F. Supp.2d 20, 22 (D.D. C. 2003) (if admission that plaintiff was not selected due to his race did not constitute direct evidence, "one wonders what would").

Defendant inaccurately claims that there is no evidence that McLean was biased and invites Plaintiff "to point specifically to any such evidence in the record to support that assertion against Mr. McLean." (*See* Notice at 5.) Although that evidence was set forth in Plaintiff's Opposition to Summary Judgment and Statement of Material Facts in Dispute, a portion is repeated here:

- McLean claimed that he made the decision to terminate Mr. Gross because of a supposed lack of billable hours, yet Akin Gump told the EEOC that Mr. Gross was terminated for different reasons. Akin Gump never mentioned billable hours in its lengthy submission to the EEOC or (when asked to state all reasons for the termination) in its sworn Answers to Interrogatories. (Opp. at 20-21);

- Contrary to McLean's explanation, Akin Gump never informed Mr. Gross that his job was in jeopardy because of a supposed lack of billable hours or that he was fired for that reason. In fact, Akin Gump employed Mr. Gross to manage and develop the Korean Practice Group knowing full well that his efforts to do so would not entail billable time. (Opp. at 22-23);

- McLean claims that he alone made the termination decision, yet before the EEOC and in its interrogatory responses Defendant never claimed the decision was his alone, and instead represented that Kim and Quigley participated in the decision. (Opp. at 23-27).

From this and other record evidence a jury could reasonably infer that McLean furnished pretextual reasons for the termination, which serves as evidence of bias. *See Reeves*, 530 U.S. at 147. In ignoring blatant evidence of bias on the part of Kim and Quigley, Defendant appears to

3

suggest that the only way Plaintiff could prove discrimination would be to demonstrate that *three* decisionmakers (and not just two) employed overtly discriminatory remarks. However, direct evidence is rare, and circumstantial evidence of pretext is entirely sufficient to prove bias. *See, e.g., Hunt v. Cromartie,* 526 U.S. 541, 553 (1999) ("Outright admissions of impermissible . . . motivation are infrequent and plaintiffs often must rely upon other evidence.").

Unlike this case, the *Furline* case involved no evidence that a biased individual actually participated in the allegedly discriminatory decision. Nor did the plaintiff in that case produce evidence of pretext or bias by any decisionmaker. *See Furline*, 2008 WL 2827467 at *4-5, 7. Here, in contrast, Plaintiff offers overt evidence that biased partners participated in the termination decision and that the reasons given for the termination were pretextual – circumstances suggesting bias by all decisionmakers. Plaintiff respectfully suggests that *Furline* should have no bearing on this Court's decision concerning the Defendant's pending motion for summary judgment.

Respectfully submitted,

WEBSTER, FREDRICKSON, CORREIA & PUTH, PLLC

_____/s/_____
Jonathan C. Puth  #439241
1775 K Street, N.W., Suite 600
Washington, D.C.  20006
(202) 659-8510
Attorney for Plaintiff Gross

4

**CERTIFICATE OF SERVICE**

    I hereby certify that on this **22nd** day of August 2008, a copy of the foregoing Response to Defendant's Second Notice of Supplemental Authority was transmitted via electronic filing to:

Christine Nicolaides Kearns, Esq.
Karen McTavish, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
2300 N St., N.W.
Washington, DC  20037

Counsel for Defendant

                                               /s/
                               Jonathan C. Puth  #439241
                               Webster, Fredrickson, Correia & Puth
                               1775 K Street, N.W., Suite 600
                               Washington, D.C. 20006
                               (202) 659-8510